[No. S050761. Jan. 31, 1997.]

GILARDO C. ALCARAZ, Plaintiff and Appellant, v.
PETER VECE et al., Defendants and Respondents.

**COUNSEL**

B. E. Bergesen III, O'Brien & Harrington, William K. O'Brien and Colleen Duffy-Smith for Plaintiff and Appellant.

Joni Brandvold, Arnelle, Hastie, McGee, Willis & Greene, Otis McGee, Jr., and Jesper I. Rasmussen for Defendants and Respondents.

Gassett, Perry & Frank and Jacquelyn K. Wilson as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**GEORGE, C. J.**—Plaintiff Gilardo C. Alcaraz was injured when he stepped into a water meter box located in the lawn in front of the rental property of which he was a tenant. The cover of the meter box either was broken or missing. He sued his landlords, but the superior court granted summary judgment for defendants because the meter box was not located on defendants' property, but within an adjacent strip of land owned by the city, running between the sidewalk and defendants' property line.

For the reasons that follow, we affirm the Court of Appeal's ruling that the superior court erred in granting summary judgment for defendants,

because we conclude that a triable issue of fact exists as to whether defendants exercised control over the narrow strip of land owned by the city, that was located adjacent to, and was not noticeably separate from, defendants' property, and thus had a duty to warn plaintiff of, or protect him from, the hazard in question. Our determination that a triable issue of fact exists as to whether defendants exercised control over the property on which the hazard was located resolves the issue whether the superior court properly granted summary judgment for defendants and, therefore, we have no occasion in this case to decide under what circumstances, if any, a possessor of land may owe a duty to warn persons on the property of a hazard located on adjacent property that he or she does not own, possess, or control.

I

On April 17, 1991, Gilardo C. Alcaraz filed a complaint against the owners of the rental property of which he was a tenant, located at 141-147 Lincoln Avenue in the City of Redwood City (the city), alleging he had suffered personal injuries. In an amended complaint, he alleged that on the evening of April 17, 1990, he was injured when he stepped into a utility meter box embedded in the lawn next to the sidewalk in front of the building in which he was renting an apartment. Plaintiff alleged that defendants had actual notice that the cover to the utility box either was broken or missing.

On November 12, 1993, defendants filed a cross-complaint against the city and its water department, alleging that cross-defendants owned and maintained the meter box into which plaintiff had fallen and knew, or should have known, of its dangerous condition.

Defendants thereafter filed a motion for summary judgment on the complaint, asserting they owed no duty to plaintiff because they did not own either the meter box or the land upon which it was located. The evidence offered in support of the motion for summary judgment included a declaration from Jon Lynch, senior civil engineer for the city, stating that the meter box was located within a 10-foot-wide strip of land owned by the city that extends from the curb of Lincoln Avenue to defendants' property line, encompassing the sidewalk and an additional approximately 2-foot-wide strip of lawn area adjacent to defendants' property line. The closest edge of the meter box was one foot from defendants' property line. Attached as an exhibit to the declaration was a copy of a page from the city's utility block book showing that the meter box was located within this 10-foot-wide strip of land owned by the city.

Defendants also offered in support of the motion the declaration of a licensed land surveyor, John May, who stated that he had conducted a survey

and concluded "that the subject water meter is located outside the property boundaries of 141-147 Lincoln Avenue." A hand-drawn map attached as an exhibit to the declaration indicates that the nearest edge of the water meter is three inches from defendants' property line, and that the water meter is located within the strip of land owned by the city, specifically in an area approximately two feet wide lying between the sidewalk and defendants' property line.

In his opposition to defendants' motion for summary judgment, plaintiff maintained that defendants were responsible for his injuries because they "either own a portion of the property on which the meter box is located, . . . or more importantly, defendants maintain and control the subject premises." Plaintiff submitted photographs of the premises where the accident occurred and excerpts of a deposition of defendant Peter Vece, to establish that (1) prior to and at the time of the accident, defendants maintained the entire lawn from the front of the apartment building to the sidewalk, including that portion of the lawn that lies on the strip of land owned by the city, and (2) subsequent to the incident in question, defendants constructed a fence that bordered the sidewalk and enclosed the entire lawn in front of their property, including the approximately two-foot wide portion of the strip of land owned by the city lying between the sidewalk and defendants' property line.

In addition, plaintiff submitted the declaration of Stephen Amer, a neighbor who resided in the same building at the time of the accident. The declaration stated that, on several occasions, Amer had informed both defendant Vece and "various 'Water Company meter readers' " that the cover of the meter box either was broken or missing. Plaintiff also submitted the declaration of Stanley Gray, a licensed land surveyor, who stated that he had conducted a survey of defendants' property and concluded "that the southerly right-of-way line of Lincoln Avenue, Redwood City, California cannot be ascertained within standard accuracy (1:10,000). Making an absolute statement about this boundary line is an impossibility as no recoverable monuments were set in 1902 within the subdivision. I found a variation of professional opinions in a total range of nine inches. It is reasonably probable, therefore, that the subject water meter box is not entirely located on property owned by the City of Redwood City, but rather a portion thereof may be located inside the property boundaries of 141-147 Lincoln Avenue, Redwood City, California."[1]

The superior court granted defendants' motion for summary judgment, issuing a written opinion concluding that no triable issues of fact existed,

---

[1]Defendants objected to Gray's declaration on several grounds, and the superior court sustained the objection. Plaintiff argued on appeal that this evidentiary ruling was incorrect. The Court of Appeal did not expressly rule on this issue in its opinion reversing the summary

because defendants neither owned nor exercised control over the meter box and "it is undisputed that the City of Redwood City owns the real property upon which the box is located . . . and exercises control over the box . . . ."

The Court of Appeal reversed the summary judgment rendered by the superior court. The appellate court agreed with the lower court "that the declarations filed by defendants demonstrated that there was no triable issue as to the fact of ownership of the meter box, because defendants neither owned nor exercised control over the meter box." The Court of Appeal also agreed that there was "no triable issue of fact [disputing] that the city, not defendants, owned the real property on which the meter box was located." But the appellate court went on to conclude that the superior court had erred in granting summary judgment for defendants, because there existed a "triable issue of fact as to whether the combination of the circumstances of defendants' actual or apparent control over immediately adjacent premises and the foreseeability of injury to plaintiff created a duty on the part of defendants to either warn plaintiff of the danger, or protect him from it, or both." The Court of Appeal reasoned that the circumstances that "defendants maintained the lawn completely surrounding the meter box" and that defendant Vece had actual notice of the broken or missing cover, gave rise to a duty to protect or warn plaintiff.

## II

### A

The superior court granted summary judgment in favor of defendants on the grounds that they did not own, or exercise control over, the water meter box into which plaintiff fell, and did not own the land upon which the meter box was located. Summary judgment is proper "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

The circumstance that defendants did not own or exercise control over the meter box itself does not entitle them to judgment as a matter of

judgment, but included in its statement of facts a quotation from the Gray declaration. Later in its opinion, the Court of Appeal concluded that the Gray declaration was insufficient to raise a triable issue of fact concerning ownership of the land upon which the meter box is located. On review before this court, neither party has briefed the issue of the admissibility of this evidence, and plaintiff does not challenge the Court of Appeal's conclusion that the Gray declaration was insufficient to raise a triable issue of fact concerning ownership of the land upon which the meter box is located. Accordingly, we express no view regarding the correctness of the superior court's and the Court of Appeal's rulings on these issues.

law. ■ "The proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others . . . ." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) This requires persons "to maintain land in their possession and control in a reasonably safe condition. [Citations.]" (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

This duty to maintain land in one's possession in a reasonably safe condition exists even where the dangerous condition on the land is caused by an instrumentality that the landowner does not own or control. For example, in *Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 233 [282 P.2d 69], this court held that the owner of land could be held liable for failing to warn its tenant of the danger posed by use of a crane near overhead electrical lines, even though the landowner neither owned nor maintained the electrical lines. The Court of Appeal reached the same conclusion on similar facts in *Krongos* v. *Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 393 [9 Cal.Rptr.2d 124]. ■ Accordingly, in the present case, if the condition of the meter box created a dangerous condition on land that was in defendants' possession or control, defendants owed a duty to take reasonable measures to protect persons on the land from that danger, whether or not defendants owned, or exercised control over, the meter box itself. In other words, if the presence of the broken meter box made it dangerous to walk across land in defendants' possession or control, defendants had a duty to place a warning or barrier near the box to protect persons on the land from that danger.

The following hypothetical situation illustrates this point. If a live power transmission line falls, creating a hazard, the possessor of the property on which the power line has fallen, who knows of the hazard, cannot escape liability for injuries to persons who enter the land and encounter the power line simply because the land possessor does not own the power line and lacks the authority to disconnect the line or remove it. A possessor of land who knows of the hazard would have a duty to erect a barrier or warn persons entering the land of the danger, whether or not the possessor of the land has the authority to eliminate the hazard.

Defendants rely upon the decision in *Hamilton* v. *Gage Bowl, Inc.* (1992) 6 Cal.App.4th 1706 [8 Cal.Rptr.2d 819] to support their contention that they are not liable for plaintiff's injuries because they did not control the meter box itself. In *Hamilton*, the plaintiff was injured while standing in the parking lot of a bowling alley when a sign fell from the wall of an adjacent

building. The bowling alley did not own the sign or the wall, but had refurbished and rehung another sign on the wall and had repainted a small portion of the wall to cover graffiti, all without seeking the owner's permission. The plaintiff argued that the bowling alley had exercised sufficient control over the wall to warrant imposition of a duty to inspect the sign that fell, but the Court of Appeal disagreed, observing that although the defendant had exercised some degree of control over the wall, it had not exercised control over the sign that caused the plaintiff's injuries. The Court of Appeal concluded: "It follows that plaintiff's proposed evidence was insufficient to establish a duty on defendant's part to discover the dangerous condition of the sign . . . ." (*Id.* at p. 1713.)

*Hamilton* is distinguishable from the present case. Unlike *Hamilton*, the issue in the case before us is not whether defendants had a duty to discover a dangerous condition located on property they did not own. Plaintiff in the present case alleged that defendants *had* received actual notice of the defective condition of the meter box. The issue, therefore, is not whether defendants had a duty to inspect or repair the meter box, but whether, in light of their alleged knowledge of the dangerous condition of the meter box, they had a duty to persons entering the strip of land to protect them from, or warn them of, the hazard. Defendants could satisfy such a duty by posting warnings or erecting barricades on the property under their control, and would not have been required to inspect or repair the meter box.

*Hamilton* would be more like the present case if the bowling alley had received actual notice that the sign hanging over its parking lot was secured to the wall improperly and in danger of falling. Under such circumstances, the bowling alley would have had a duty to persons using its parking lot to protect them from, or warn them of, the dangerous sign.

### B

Neither does the circumstance that defendants in the present case did not own the land on which the meter box was located entitle them to judgment as a matter of law. In the present case, the superior court found it was undisputed that defendants did not own the narrow strip of land on which the meter box was located, and plaintiff does not challenge that determination here. There remains a triable issue of fact, however, whether defendants exercised control over that land and thus had a duty to protect or warn plaintiff.

" '[T]he duties owed in connection with the condition of land are not invariably placed on the person [holding title] but, rather, are owed by

the person in possession of the land [citations] because [of the possessor's] supervisory control over the activities conducted upon, and the condition of, the land.'" (*Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 368 [178 Cal.Rptr. 783, 636 P.2d 1121]; *Preston* v. *Goldman* (1986) 42 Cal.3d 108, 119 [227 Cal.Rptr. 817, 720 P.2d 476] ["*Sprecher* demonstrates that we have placed major importance on the existence of possession and control as a basis for tortious liability for conditions on the land."].) This court recognized in *Johnston* v. *De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394 [170 P.2d 5] that a defendant who lacks title to property still may be liable for an injury caused by a dangerous condition on that property if the defendant exercises control over the property. One of the defendants in *Johnston* operated a restaurant in a portion of a building leased from the owner of the property. A prospective customer of the restaurant fell while walking from her automobile onto an unlit portion of a walkway leading to the restaurant. The walkway was not situated within the premises leased by the defendant. This court observed: "A tenant ordinarily is not liable for injuries to his invitees occurring outside the leased premises on common passageways over which he has no control. [Citations.] Responsibility in such cases rests on the owner, who has the right of control and the duty to maintain that part of the premises in a safe condition. ██ ██ It is clear, however, that if the tenant exercises control over a common passageway outside the leased premises, he may become liable to his business invitees if he fails to warn them of a dangerous condition existing thereon."[2] (28 Cal.2d at p. 401.)

 We subsequently restated the principles announced in *Johnston*: "The courts have long held that one who invites another to do business with him owes to the invitee the duty to exercise reasonable care to prevent his being injured on 'the premises.' The physical area encompassed by the term 'the premises' does not, however, coincide with the area to which the invitor possesses a title or a lease. The 'premises' may be less or greater than the invitor's property. The premises may include such means of ingress and egress as a customer may reasonably be expected to use. *The crucial element is control.*" (*Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 239 [60 Cal.Rptr. 510, 430 P.2d 68], fns. omitted, italics added.)

The Restatement Second of Torts uses the phrase "possessor of land," rather than the terms "owner" or "lessee," to describe who may be liable for injuries caused by a dangerous condition of land. (See, e.g., Rest.2d Torts,

---

[2]Of course, the liability of a possessor of land no longer depends upon the "rigid common law classifications" of trespasser, licensee, and invitee. (*Rowland* v. *Christian, supra,* 69 Cal.2d 108, 118.) Instead, we "approach the issue of the duty of the occupier on the basis of ordinary principles of negligence. [Citations.]" (*Ibid.*)

§ 343, p. 215.) Section 328E (p. 170) of the Restatement Second of Torts defines the term "possessor of land" to include "a person who is in occupation of the land with intent to control it . . . ." The comment to this section explains: "The important thing in the law of torts is the possession and not whether it is or is not rightful as between the possessor and some third person." (*Id.,* § 328E, com. a, p. 171.)

In similar fashion, the Courts of Appeal have recognized that a defendant's potential liability for injuries caused by a dangerous condition of property may be based upon the defendant's exercise of control over the property. "In common law parlance, the possessor of land is the party bearing responsibility for its safe condition. Possession, in turn, is equated with occupancy plus control. [Citations.] Thus, in identifying the party vulnerable to a verdict, control dominates over title. 'The crucial element is control.' [Citation.]" (*Low* v. *City of Sacramento* (1970) 7 Cal.App.3d 826, 831 [87 Cal.Rptr. 173]; see also *Both* v. *Harband* (1958) 164 Cal.App.2d 743, 748 [331 P.2d 140] ["[A]ctual exercise of control by the tenant [over a portion of leased property], even though the lease itself confers no right of such control upon him, can subject him to liability."].)[3]

In *Orthmann* v. *Apple River Campground, Inc.* (7th Cir. 1985) 757 F.2d 909, the foregoing principles were applied to circumstances analogous to those in the present case. The plaintiff in that case rented an inner tube in order to float down a river, and stopped at a place on the riverbank from which a tree extended over the river. The tree frequently was used for

---

[3]In her dissent, Justice Kennard asserts that a defendant who exercises control over land may be liable for injuries caused by a dangerous condition on the property only if the defendant had the *right* to control the property. (Dis. opn. of Kennard, J., *post*, at pp. 1176-1178.) But Justice Kennard cites no case, and we are aware of none, in which a defendant who exercised control over property was held not liable for injuries caused by a dangerous condition of such property simply because the defendant had no right to control the property. It would be anomalous to conclude that a person who wrongfully takes possession of land owned by another, exercising control over that land, cannot be held liable for injuries caused by a dangerous condition of the property.

In her dissent, Justice Kennard asserts that the comment to section 328E of the Restatement Second of Torts, cited above, applies only to persons in the process of gaining ownership of land through adverse possession. (Dis. opn. of Kennard, J., *post*, at p. 1181.) The comment, while offering such circumstances as one example of possession that is not rightful, does not limit the application of the general principles stated in the comment to such circumstances.

Justice Kennard's interpretation of section 328E of the Restatement Second of Torts suggests that liability may flow from a wrongful exercise of control over property if such conduct constitutes adverse possession that ultimately will ripen into ownership. (Dis. opn. of Kennard, J., *post*, at p. 1182.) But this means that the potential liability of an adverse possessor of land depends upon whether that person has satisfied all of the prerequisites for obtaining title, such as paying taxes on the property. (Code Civ. Proc., § 325.) It is difficult to discern why the payment or nonpayment of taxes should affect the liability of a possessor of land for injuries caused by a dangerous condition of the property.

diving. The plaintiff dived into the river, struck his head on a submerged rock, and was injured. He sued the association that had rented the inner tube to him and that owned most of the land bordering this stretch of the river—but not the land from which the plaintiff dove. That section of the riverbank was owned by the Montbriand family.

In permitting the plaintiff to proceed with his suit, the federal appellate court stated that the case before it was difficult, because "defendants do not own the property from which Orthmann dove. But according to an affidavit . . . , shortly after the accident the defendants came on the Montbriands' land without asking their permission, and cut the tree down. The affidavit also states that the Montbriands had seen the defendants cleaning and maintaining the banks of the river on the Montbriands' land. It is possible to infer that the defendants, though they did not own the Montbriand property, treated it as if they did—the cutting down of the tree after the accident being a dramatic assertion of a right normally associated with ownership or at least (which is all that is necessary, as we are about to see) possession.

"This is not to say that the defendants could be held liable, under any tort theory we know, if their customers just strayed onto someone else's property and got injured there. . . . But if the landowner treats the neighbor's property as an integral part of his, the lack of formal title is immaterial. Whoever controls the land is responsible for its safety. [Citation.] That is why it is normally the tenant rather than the landlord who is liable to anyone injured as a result of a dangerous condition on leased land and why this field of tort law is more accurately described as land occupiers' and possessors' liability than as landowners' liability. [Citations.] [¶] It would make no sense to treat an occupier more leniently just because his rights in the land were less well-defined than a tenant's—or maybe were nonexistent." (757 F.2d at pp. 913-914.)

In *Husovsky* v. *United States* (D.C. Cir. 1978) 590 F.2d 944 [191 App.D.C. 242], the plaintiff was driving on a public street that ran through a federally owned and maintained park, when a tree fell upon his automobile, injuring him. The plaintiff sued the District of Columbia, which owned and maintained the street, and the United States Government, which owned and maintained the park. The tree that fell upon plaintiff, however, had stood on a tract of land owned by the Government of India. When the park was established in 1945, the United States had attempted to purchase this land. The Government of India refused to sell the land, but promised to preserve the " 'natural park-like character' of the tract." (*Id.* at p. 949.) The appellate court observed: "Pursuant to this agreement, the tract of land on which the fallen tulip poplar stood has been left in a wooded state indistinguishable

from contiguous federal parkland. From 1945 through the date of appellee's injuries, the tract was marked with wooden stakes and granite boundary monuments bearing United States insignia, identical with those located on federally owned lands. In addition, the wooden stakes had been periodically repainted, replaced, or restenciled by employees of the National Park Service, a federal agency, in the interim since 1945. [¶] . . . Park Service employees . . . testified at the trial in the District Court that not until a year after the occurrence of the accident involved in this appeal did it come to their attention that the tract of land upon which the tulip poplar stood was not federally owned [citation]; for at least ten years prior to the accident the Service undertook to service and maintain the tract as it did Class C federal parkland." (*Ibid.*, fn. omitted.)

Based upon the foregoing circumstances, the Court of Appeals concluded that the United States Government owed a duty "to use reasonable care to protect passers-by on adjoining public ways from hazardous trees" on the tract of land owned by the Government of India. (*Husovsky* v. *United States, supra*, 590 F.2d 944, 952.) The court observed: "The duties owed in connection with the condition of land are not invariably placed on the person in whom the land is titled, but, rather, are owed by the person in possession of the land, [citations], because the occupant or possessor has supervisory control over the activities conducted upon, and the condition of, the land. [¶] . . . We hold that having assumed such notorious and open public display of control of the tract, the United States had a duty to exercise reasonable care in its supervision thereof . . . ." (*Id.* at p. 953.)

The same reasoning applies where a plaintiff is injured in a defendant's fenced backyard by a latent dangerous condition known to the defendant. Under such circumstances, the defendant could not escape liability merely by establishing that the fence was not located on the property line and that a neighbor, rather than the defendant, actually held title to the land containing the dangerous condition. As long as the defendant exercised control over the land, the location of the property line would not affect the defendant's potential liability.

In the present case, the superior court found that defendants held no legal interest in the land on which the meter box was located. Plaintiff does not challenge that ruling in this court. But summary judgment should not have been granted for defendants, because a triable issue of fact exists concerning whether defendants nevertheless exercised control over the property surrounding the meter box and thus had a duty to protect plaintiff from, or warn him of, the hazardous condition of the meter box. Evidence was introduced establishing that defendants maintained the lawn that covered the

approximately two-foot-wide portion of the strip of land owned by the city surrounding the meter box and adjoining their property and that, following plaintiff's injury, defendants constructed a fence that enclosed the entire lawn, including the portion located on the narrow strip of land owned by the city. From this evidence, a reasonable trier of fact could infer that defendants exercised control over this approximately two-foot-wide portion of the strip of land owned by the city and treated the land surrounding the meter box, which bordered defendants' property, as an extension of their front lawn.[4]

 Justice Brown's dissent is correct in stating that "property owners are liable for injuries on land they own, possess, or control." (Dis. opn. of Brown, J., *post*, at p. 1190.) But her opinion seems to overlook the fact that the phrase "own, possess, *or* control" is stated in the alternative. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].) A defendant need not own, possess *and* control property in order to be held liable; control alone is sufficient.

Justice Brown's dissent would add a requirement, not found in this court's decision in *Isaacs* v. *Huntington Memorial Hospital*, *supra*, 38 Cal.3d 112, that a landowner may be held liable for an injury on adjacent property only if the landowner both exercises control over that property and derives a commercial benefit from the portion of the property that caused the injury. (Dis. opn. of Brown, J., *post*, at pp. 1196-1197.) Such a "commercial benefit" requirement is not found in any decision of this court, but has been discussed by two recent decisions of the Courts of Appeal, *Swann* v. *Olivier* (1994) 22 Cal.App.4th 1324 [28 Cal.Rptr.2d 23] and *Princess Hotels Internat., Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 645 [39 Cal.Rptr.2d 457]. Prior to these recent decisions, no California case had stated that a property owner could be held liable for an injury caused by a dangerous condition on

---

[4]In her dissent, Justice Kennard maintains that our holding that there exists a triable issue of fact—as to whether defendants exercised control over the land—is inconsistent with the rule that the existence of a duty is a question of law. (Dis. opn. of Kennard, J., *post*, at p. 1183.) We agree that "the existence and scope of a defendant's duty of care is a *legal* question" for the court to decide (*Knight* v. *Jewett* (1992) 3 Cal.4th 296, 313 [11 Cal.Rptr.2d 2, 834 P.2d 696], italics in original), and we have applied that principle by reaffirming the established rule that a person who exercises control over property owes a duty of care to persons injured by a dangerous condition on that property. The determination of this issue, however, does not eliminate the role of the trier of fact. "In an action for negligence the plaintiff has the burden of proving [¶] (a) facts which give rise to a legal duty on the part of the defendant . . . ." (Rest.2d Torts, § 328A, p. 149; *O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729, 749 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R.3d 1]; cf. *Ramirez* v. *Plough, Inc.* (1993) 6 Cal.4th 539, 546 [25 Cal.Rptr.2d 97, 863 P.2d 167, 25 A.L.R.5th 899].) Where a triable issue of fact exists, it is the function of the jury to determine the facts. (Rest.2d Torts, § 328C, subd. (a), p. 154.) We simply hold that a trier of fact could find on the record before us that defendants exercised control over the property on which the meter box was located.

adjacent property only if the defendant derived a commercial benefit from the adjacent property.

The phrase "commercial benefit" apparently first was used in this context in *Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379 [243 Cal.Rptr. 627], which held that a supermarket was not liable for injuries to a customer suffered in a traffic accident that took place on the public street in front of the market. The plaintiff alleged that the market was liable because it used the street and sidewalk "for the commercial benefit of the supermarket for the delivery of goods and as a customer parking area." (*Id.* at p. 382.) The Court of Appeal rejected the plaintiff's reliance upon the concept of commercial benefit and instead based its decision upon the defendant's lack of control over the public street: "[A]lthough it is indisputable that the scope of premises liability has been greatly expanded in the last 10 years, plaintiff is attempting to extend the duty *beyond* the premises and into an undefined zone of 'commercial use.' The imposition of such a duty is foreign to the concept upon which all premises liability is based, i.e., that possession includes the attendant right to manage and control, thereby justifying the imposition of a duty to exercise due care in the management of the property. [Citations.]" (*Id.* at p. 386, italics in original.)

The decision in *Southland Corp.* v. *Superior Court* (1988) 203 Cal.App.3d 656 [250 Cal.Rptr. 57] used the phrase "commercial benefit" in discussing whether there was a triable issue of fact whether a business exercised sufficient control over an adjacent parking lot to support a finding of liability for injuries to a customer who was assaulted a few feet beyond the property line of the store. The attack occurred adjacent to the store in a parking lot that was not owned or leased by the store, but that often was used by the store's customers. The Court of Appeal noted that the plaintiff's belief that the store controlled this parking lot "may not have been unreasonable," observing "that to the extent a greater parking capacity increased sales, then the store realized a commercial benefit from such use of the lot." (*Id.* at p. 661.) But it is clear that the Court of Appeal considered such commercial benefit to be but one factor bearing upon the dispositive issue of whether the store exercised control over the adjacent property: "The record reflects evidence, and legitimate inferences therefrom, which would support a jury's conclusion that petitioners did exercise a sufficient control over the lot so as to legally permit the imposition of a duty to those customers using the lot. For example, (1) only eight marked parking spaces were provided on the store's premises and these often proved inadequate, (2) customers, including [the plaintiff], regularly used the adjacent lot to park while shopping at the store, (3) petitioners' lease apparently authorized the nonexclusive use of the adjacent lot for customer parking, (4) petitioners were aware that their

customers regularly used the lot and took no action to limit or discourage such use, (5) a reasonable inference can be drawn that petitioners realized a significant commercial benefit from their customers' use of the lot, (6) the store premises and the adjacent lot had become a hangout for local juveniles, among whom fist fights sometimes broke out, and (7) the store employees had, on a number of occasions, taken action, including the request of police assistance, to remove juvenile loiterers from both the store premises and the adjacent lot." (*Id.* at pp. 666-667, fn. omitted.)

The court thus concluded: "Where, as here, there is evidence that petitioners received a commercial advantage from property they apparently had a leasehold right to use (which use by their customers they at least passively encouraged) and where their business was itself the attraction for both customers and loiterers, it is overly simplistic for the issue of control to be resolved solely by reference to a property boundary line and the fortuitous circumstance that the attack on [the plaintiff] took place just 10 feet beyond it. While we can not conclude that these circumstances establish that petitioners did exercise control over the adjacent lot, we do find that they are sufficient to raise an issue of fact that must be resolved by a jury." (203 Cal.App.3d at p. 667.)

In *Lucas v. George T. R. Murai Farms, Inc.* (1993) 15 Cal.App.4th 1578 [19 Cal.Rptr.2d 436], migrant farm workers, living in a makeshift structure on undeveloped land adjacent to the defendants' farms, were injured when the structure caught fire. The plaintiffs argued that the defendants owed a duty to make the premises safe or warn of the dangers because they "encouraged the labor camp environment to exist, and gained an economic benefit from it." (*Id.* at p. 1589.) The Court of Appeal rejected this approach, relying instead upon the settled rule that " '[t]he law of premises liability does not extend so far as to hold [the landowner] liable merely because its property exists next to adjoining dangerous property and it took no action to influence or affect the condition of such adjoining property.' " (*Id.* at p. 1590.)

This was the state of the law when the Court of Appeal decided *Swann* v. *Olivier, supra,* 22 Cal.App.4th 1324. The holding in *Swann* is unremarkable. It held, using language consistent with our holding in the present case, that the owners of a private beach were not liable for injuries sustained by the plaintiff while in the ocean adjacent to the property because the defendants "do not own or control the ocean, and they are not responsible for injuries that take place in that ocean." (*Id.* at p. 1326.) The opinion in *Swann,* however, goes on to observe that, in several instances, businesses have been held liable for injuries that occurred on adjacent property when the business

has "received a special commercial benefit from the area of the injury plus had direct or de facto control of that area." (*Id.* at p. 1330.) In support of this observation, which is unnecessary to the holding in that case, the court in *Swann* cites this court's decision in *Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d 394, in which the owner of a restaurant was held liable for injuries sustained by a prospective customer while entering an unlit portion of a walkway leading to the restaurant, despite the circumstance that the walkway was not situated within the premises leased by the defendant.

As noted above, this court held in *Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d 394, 401, "that if the tenant exercises control over a common passageway outside the leased premises, he may become liable to his business invitees if he fails to warn them of a dangerous condition existing thereon." Nothing in our opinion in *Johnston* suggests that, in addition to exercising control of the property that caused the injury, the defendant also must derive a commercial benefit from that property. The term "business invitees" was merely a reference to the "rigid common law classifications" of trespasser, licensee, and invitee which we since have abandoned. (*Rowland* v. *Christian, supra,* 69 Cal.2d at p. 118.)

The other Court of Appeal decision to propose a "commercial benefit" requirement, *Princess Hotels Internat., Inc.* v. *Superior Court, supra,* 33 Cal.App.4th 645, 646, also involved injuries sustained in the ocean adjacent to the defendants' property and holds, in language consistent with the established rule, "that a hotel has no duty to warn its guests of a dangerous condition of adjacent property over which the hotel has no control, to wit, the ocean currents." Relying upon the decision in *Swann,* however, the Court of Appeal went on to note that the circumstance that the hotel derived an obvious commercial benefit from its proximity to the ocean was insufficient to establish liability: "The California cases, as correctly analyzed by *Swann,* require control as well as a commercial benefit; and the ocean is simply not within the control of humankind." (*Id.* at p. 652, italics omitted.) Again, this discussion of commercial benefit is unnecessary to the decision. The absence of liability in that case follows from the defendants' lack of control over the property that caused the injury.

Justice Brown's dissent cites no case, and we are aware of none, in which a defendant that exercised control over property on which an injury occurred was found not liable simply because the defendant derived no commercial benefit from that property.

The opinions in *Swann* and *Princess Hotels,* and Justice Brown's dissent, fail to explain why liability for injuries on adjacent property should depend

upon whether the defendant derives a commercial benefit from that property. Nothing in our opinion in *Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d 394, suggests that the result in that case would have been different if, instead of being the owner of a business, the defendant had been a homeowner who had been sued by a social guest whom the homeowner had directed to park on adjacent property and use an unsafe walkway controlled, but not owned, by the homeowner. If a visitor is injured on property controlled by the defendant, liability does not depend upon whether the defendant derived a commercial benefit from the property.[5] We disapprove any language to the contrary in *Swann* v. *Olivier, supra,* 22 Cal.App.4th 1324, and *Princess Hotels Internat., Inc.* v. *Superior Court, supra,* 33 Cal.App.4th 645.

## C

■ In the superior court, defendants objected to the evidence introduced by plaintiff reflecting that defendants maintained the lawn on the strip of land owned by the city and, subsequent to the incident at issue, constructed a fence surrounding the entire lawn. Defendants argued this evidence was irrelevant and violated the rule set forth in Evidence Code section 1151 that evidence of subsequent remedial conduct "is inadmissible *to prove negligence.*" (Italics added.) In granting summary judgment for defendants, the superior court sustained defendants' objections to this evidence.

Plaintiff argued on appeal that these evidentiary rulings were incorrect. The Court of Appeal did not rule expressly on these issues in its opinion reversing the summary judgment, but included in its statement of facts the circumstances that defendants had maintained the lawn surrounding the meter box and, subsequent to the incident at issue, had constructed a fence around the entire lawn. On review before this court, neither party briefed the issue of the admissibility of this evidence, and both parties mention in describing the circumstances of the case that defendants had maintained the lawn surrounding the meter box and, subsequent to the incident at issue, constructed a fence around the entire lawn.

We agree with the implied ruling of the Court of Appeal that the superior court erred in excluding this evidence regarding defendants' maintenance of the lawn and their construction of the fence. This evidence was highly relevant regarding whether defendants exercised control over the strip of land owned by the city.

---

[5] Were a "commercial benefit" requirement to exist, its application to the present case would require the resolution of questions including whether residential income property, like that here involved, is a business within the meaning of the rule, and whether the benefit conferred by a water meter (see Justice Mosk's concurring opinion, *post*) constitutes a "commercial benefit."

" 'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) As explained above, whether defendants exercised control over the strip of land owned by the city on which the meter box was located is a "disputed fact that is of consequence to the determination of the action." (*Ibid.*) Indeed, if defendants exercised control over this strip of land, it appears clear they owed a duty to protect or warn plaintiff.

Evidence that defendants maintained the lawn on the strip of land owned by the city certainly has some "tendency in reason to prove or disprove" whether defendants exercised control over that land. This is not to say that the simple act of mowing a lawn on adjacent property (or otherwise performing minimal, neighborly maintenance of property owned by another) generally will, standing alone, constitute an exercise of control over property and give rise to a duty to protect or warn persons entering the property. But it cannot be doubted that such evidence is relevant on the issue of control.

The circumstance that defendants constructed a fence surrounding the narrow, city-owned strip of land that bordered their property also is highly relevant. It is obvious that the act of enclosing property with a fence constitutes an exercise of control over that property. Code of Civil Procedure section 323, which defines adverse possession under a written instrument or judgment, states that "land is deemed to have been possessed and occupied . . . [¶] . . . [¶] 2. Where it has been protected by a substantial enclosure." In *Lofstad* v. *Murasky* (1907) 152 Cal. 64, 69 [91 P. 1008], this court defined "actual possession" of real property as "an appropriation of the land by the claimant such as will convey to the community where it is situated visible notice that the land is in his exclusive use and enjoyment; an appropriation manifested by either inclosing it, or cultivating it, or improving it or adapting it to such uses as it is capable of." Defendants' maintenance of the lawn and construction of the fence could support a finding that defendants took possession of the strip of land owned by the city and exercised control over it.

Defendants argued in the superior court that construction of the fence could not be considered in determining whether defendants exercised control over the property because the fence was constructed after plaintiff was injured. We agree that the circumstance that the fence was constructed after plaintiff was injured lessens the probative value of this evidence in demonstrating that defendants were exercising control over the property at the time plaintiff was injured, but it does not render the evidence irrelevant. Defendants' act of building the fence following plaintiff's injury is circumstantial

evidence that defendants also exercised possession and control over the property at the time plaintiff was injured. (See, e.g., *Morehouse* v. *Taubman Co.* (1970) 5 Cal.App.3d 548, 555 [85 Cal.Rptr. 308] ["evidence that Taubman's carpenters installed handrails at the point where Morehouse fell following his injury . . . was properly . . . received by the court . . . on the issue . . . of control of the premises, and as to whose duty it was under the contract to take such safety measures"]; 1 Witkin, Cal. Evidence (3d ed. 1986) Circumstantial Evidence, § 444, p. 413 ["where the issue is whether a defendant was the owner, possessor, or person in control of property involved in the injury, his subsequent repairs (which would scarcely be made by a stranger) may be shown to meet his denial of such control"]; see generally, Annot., 15 A.L.R.5th 119, 239 [citing cases that hold "that evidence of repairs, improvements, safety precautions, or like remedial or preventive measures taken after an injury may be admitted for the purpose of establishing that at the time of the accident, the defendant owned or controlled the place, thing, or activity which occasioned the injury, at least where ownership or control is controverted, and subject to other appropriate limitations."].) The circumstance that defendants maintained the lawn on the city's narrow strip of land both at the time of and following plaintiff's injury indicates that the construction of the fence subsequent to the injury was but a further, consistent indication of the extent to which defendants treated the city's property as their own.

As noted above, in *Orthmann* v. *Apple River Campground, Inc., supra,* 757 F.2d 909, the court considered a suit for personal injuries brought by a customer of the defendants who was injured diving into a river from land owned by a neighbor of the defendants. In allowing the suit to proceed, the court observed: "What makes this case more difficult than our hypothetical variants is that the defendants do not own the property from which Orthmann dove. But according to an affidavit of one of the Montbriands, which Orthmann included in the appendix to his brief in this court, shortly after the accident the defendants came on the Montbriands' land without asking their permission, and cut the tree down. The affidavit also states that the Montbriands had seen the defendants cleaning and maintaining the banks of the river on the Montbriands' land. It is possible to infer that the defendants, though they did not own the Montbriand property, treated it as if they did—the cutting down of the tree after the accident being a dramatic assertion of a right normally associated with ownership or at least (which is all that is necessary, as we are about to see) possession." (*Id.* at p. 913.)

As noted above, defendants also argued in the superior court that admission of evidence that they constructed the fence after plaintiff was injured violated Evidence Code section 1151, which states: "When, after occurrence

of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event." This statute does not apply, however, because evidence regarding construction of the fence was admitted, not to prove negligence, but to demonstrate that defendants exercised control over the strip of land owned by the city. As we stated in *Ault* v. *International Harvester Co.* (1974) 13 Cal.3d 113, 118 [117 Cal.Rptr. 812, 528 P.2d 1148, 74 A.L.R.3d 986], "Section 1151 by its own terms excludes evidence of subsequent remedial or precautionary measures *only when such evidence is offered to prove negligence or culpable conduct.*" (Italics added; see also Fed. Rules Evid., rule 407, 28 U.S.C., which employs language nearly identical to Evidence Code section 1151 and then explains: "This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.")

*Morehouse* v. *Taubman Co., supra,* 5 Cal.App.3d 548, involved the liability of a general contractor for injuries sustained by an employee of a subcontractor when the employee fell from the top of a wall. Among the issues to be determined was whether the general contractor had retained control of the workplace so as to warrant imposition of liability on that contractor for the accident. In recounting the evidence of such control, the Court of Appeal stated: "Taubman [the general contractor] maintained a crew of carpenters whose functions included installing guardrails at [the construction site]; and in practice, at least, provided guardrails and safety devices. There was testimony both that it was Taubman's policy to place guardrails around openings or edges of slabs above 10 feet in height and that these were installed around the perimeter of slabs where there was a dropoff, regardless of elevation. *While evidence that Taubman's carpenters installed handrails at the point where Morehouse fell following his injury was not admissible to prove negligence of Taubman (Evid. Code, § 1151) it was properly limited (Evid. Code, § 355) and received by the court, on the issue of control of the premises*, and as to whose duty it was under the contract to take such safety measures. [Citation.]" (*Id.* at p. 555, italics added, citing *Baldwin Contracting Co.* v. *Winston Steel Works, Inc.* (1965) 236 Cal.App.2d 565, 573 [46 Cal.Rptr. 421] [subsequent remedial conduct cannot be considered on the issue of liability, but "is relevant and admissible" on the issues of scope of duty and the possibility or feasibility of eliminating the cause of the accident]; see also *Dincau* v. *Tamayose* (1982) 131 Cal.App.3d 780, 796 [182 Cal.Rptr. 855] [section 1151 inapplicable, "[f]or if the subsequent events are offered to prove anything other than negligence or culpable conduct, they are admissible if relevant"]; 1 Witkin, Cal. Evidence, *supra,*

Circumstantial Evidence, § 444, p. 413 ["Where evidence of subsequent precautions or repairs is independently relevant on some issue other than negligence, the policy objection is overcome . . . ."].)

In the present case, evidence establishing that defendants constructed the fence after plaintiff was injured would not be admissible at trial to prove that defendants were negligent, but would be admissible to demonstrate that defendants exercised control over the premises. Accordingly, we may consider such evidence in determining whether a triable issue of material fact existed concerning whether defendants exercised control over the strip of land and thus owed a duty of care to plaintiff.

Defendants did not own the narrow strip of land on which plaintiff was injured, but plaintiff has presented evidence suggesting that defendants treated a portion of this strip of land as if they did own it, maintaining a lawn that spanned the property line and that rendered part of the land owned by the city indistinguishable from that owned by defendants, and (subsequent to plaintiff's injury) demonstrated their possession of this land by constructing a fence enclosing the narrow strip containing the meter box. Standing alone, simply mowing a portion of a lawn belonging to a neighbor may not constitute an exercise of control over the property so as to give rise to a duty to protect or warn persons entering the property of known dangers. But the evidence offered in the present case goes farther and is sufficient to raise a triable issue of fact as to whether defendants exercised control over the strip of land containing the meter box and thus owed a duty of care to protect or warn plaintiff of the allegedly dangerous condition of the property.[6]

### III

As should be apparent, we decide only that, based upon the circumstances of the present case, plaintiff has raised a triable issue of fact whether defendants exercised control over the strip of land owned by the city so as to

---

[6]Having concluded that it was improper for the trial court to grant summary judgment in favor of defendants, because a triable issue of fact exists as to whether defendants controlled the property on which the allegedly defective meter box was located, we have no occasion to consider the circumstances, if any, under which a possessor of land may owe a duty to persons using its property to warn them of, or protect them from, hazards on adjacent property that is *not* owned, possessed, or controlled by the defendant. (See, e.g., *Southland Corp.* v. *Superior Court* (1988) 203 Cal.App.3d 656 [250 Cal.Rptr. 57]; *Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 720 [246 Cal.Rptr. 199]; *Stedman* v. *Spiros* (1959) 23 Ill.App.2d 69 [161 N.E.2d 590, 597] [In holding that a hotel operator was not liable for injuries sustained by a guest who fell over a precipice in a state park approximately 50 feet from the hotel property, the court observed: "Clearly, if the brink of the precipice were a step or two from the defendant's door . . . , we would have a different case than is now presented to us."].)

give rise to a duty to protect or warn persons entering the land. It will be for the trier of fact to decide, based upon the evidence received at trial, whether defendants actually exercised such control. We express no opinion as to other issues that will arise, in the event the trier of fact finds that such control was exercised by defendants—including whether defendants breached that duty of care and to what extent, if any, plaintiff's injuries were caused by his sole or comparative negligence.[7] Finally, we express no opinion regarding defendants' right to full or partial indemnity from the city.

The judgment of the Court of Appeal is affirmed.

Mosk, J., Werdegar, J., and Chin, J., concurred.

**MOSK, J.**—I concur in the judgment and generally with the majority's reasoning. Contrary to the dissents' criticisms, today's decision merely applies settled principles of California law. In that respect, I write separately to explain that a body of law imposing liability for failing to maintain appurtenances to land also favors plaintiff. The principles involved ordinarily appear in tort cases involving appurtenances embedded in sidewalks to benefit adjoining property.

Before discussing the law of appurtenances, however, I explain the basis on which I join the majority opinion. First, although the scope of defendants' duty to keep the premises in a reasonably safe condition is a legal question for the court (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207]), the trier of fact is to decide whether a breach of that duty caused plaintiff's alleged injuries (*Mexicali Rose* v. *Superior Court* (1992) 1 Cal.4th 617, 633 [4 Cal.Rptr.2d 145, 822 P.2d 1292]). Nothing in our majority opinion should be interpreted otherwise.

Second, as the majority explain, possession and control govern the scope of that duty. " '[T]he right of supervision and control "goes to the very heart of the ascription of tortious responsibility . . . ." ' " (*Preston* v. *Goldman* (1986) 42 Cal.3d 108, 119 [227 Cal.Rptr. 817, 720 P.2d 476].)

Whether or not the land containing the meter box was city owned, plaintiff offered enough evidence of defendants' control of the premises to raise a triable factual question regarding their liability for his injury. He produced evidence that defendants hired someone to mow the lawn. He also produced

---

[7]Justice Brown's dissent concludes that defendants "did nothing . . . negligent." (Dis. opn. of Brown, J., *post*, at p. 1198.) As noted above, the issue whether defendants were negligent is not before us, and we express no opinion on that issue.

evidence that defendants put up a picket fence after the accident. This evidence was admissible to show control. (*Morehouse v. Taubman Co.* (1970) 5 Cal.App.3d 548, 555 [85 Cal.Rptr. 308]; cf. Evid. Code, § 1151 [evidence of later remedial measures inadmissible to show earlier negligence or culpable conduct].) Finally, plaintiff produced evidence that an erstwhile neighbor or tenant warned defendant Peter Vece several times about the missing meter box cover. This state of the evidence requires that a trier of fact decide defendants' liability.

But even if the foregoing evidence were absent, the evidence that defendants neglected to maintain an appurtenance placed on adjoining land for their benefit would suffice to defeat the summary judgment motion. " 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' " (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134].)

As alluded to, the question of the duty to maintain an appurtenance ordinarily arises in cases involving traps on sidewalks. At common law an adjoining landowner owed no duty to members of the public to protect against defects in public sidewalks. (*Winston v. Hansell* (1958) 160 Cal.App.2d 570, 572 [325 P.2d 569, 88 A.L.R.2d 326].) Streets and Highways Code section 5610 creates a duty to maintain a sidewalk, but that duty does not extend to members of the public. (*Williams v. Foster* (1989) 216 Cal.App.3d 510, 521 [265 Cal.Rptr. 15].) Therefore it appears that the common law rule still applies. (*Id.* at pp. 515, 521.) But an adjoining landowner nonetheless may be liable "for defects created by special construction for the particular needs of the abutting property." (*Winston v. Hansell, supra*, 160 Cal.App.2d at p. 575.) As we have explained, "an abutting landowner may be held liable for the dangerous condition of portions of the public sidewalk which have been altered or constructed for the benefit of his property and which serve a use independent of and apart from the ordinary and accustomed use for which sidewalks are designed." (*Peters v. City & County of San Francisco* (1953) 41 Cal.2d 419, 423 [260 P.2d 55], reaffirmed in *City & County of S.F. v. Ho Sing* (1958) 51 Cal.2d 127, 129 [330 P.2d 802].) The adjoining landowner and the city are jointly and severally liable for injury resulting from such a dangerous condition. (51 Cal.2d at p. 130.)

Potential traps giving rise to such liability include "coal holes, meter boxes, and other devices of similar character located in the sidewalk which benefit the abutting owner and are located where the general public is likely to walk. In those cases, it becomes the liability of the abutting owner to keep

such devices in good repair." (*Steen* v. *Grenz* (1975) 167 Mont. 279 [538 P.2d 16, 18]; see also Annot., Liability of Abutting Owner or Occupant for Condition of Sidewalk (1963) 88 A.L.R.2d 331, 399.)

Liability is imposed because emplacements of this type are appurtenances for the benefit of the possessor and controller of adjoining land. (*Hamelin* v. *Foulkes* (1930) 105 Cal.App. 458, 462-463 [287 P. 526].) *Hamelin* is virtually on all fours with this case. In *Hamelin*, the plaintiff stepped out of an automobile and into a hole created by the defendants' "failure to maintain a proper covering upon the sidewalk hydrant box in front of [their] store . . . . The hydrant boxes were cut in the concrete near the curb and were approximately ten inches square." (*Id.* at p. 461.) *Hamelin* found liability because "the hydrant box was solely for the use of appellants' store and was connected with appellants' meter, [and] the lease of the store and basement to appellants passed with it the possession and control of the hydrant box as an appurtenance thereto." (*Id.* at p. 462.)

*Hippodrome Amusement Co.* v. *Carius* (1917) 175 Ky. 783 [195 S.W. 113] also found liability on this basis in a case involving a water service box. "[I]f the unsafe condition of the sidewalk . . . arises from an extraordinary use permitted him [the adjoining landowner] in the use of the sidewalk for purposes of his own, and . . . the sidewalk is burdened with a servitude for his benefit or that of his property, and he appropriates the use of the contrivance which constitutes the servitude, he is jointly and severally liable . . . with the city for the injuries sustained by individuals on account of the unsafe condition of the sidewalk." (195 S.W. at p. 115.) This is so even if it is the city's duty "to look after and keep in repair the water service boxes throughout the city." (*Ibid.*)

The foregoing cases illustrate the principle that "ordinarily an easement or dominant tenement owner has the duty to maintain and repair the easement and the servient tenement owner is under no duty to do so." (*Williams* v. *Foster, supra,* 216 Cal.App.3d at p. 522, fn. 9.) Concomitant with that duty is the right to repair. (*Ward* v. *City of Monrovia* (1940) 16 Cal.2d 815, 821-822 [108 P.2d 425]; *Scruby* v. *Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 706-707 [43 Cal.Rptr.2d 810]; *City of Gilroy* v. *Kell* (1924) 67 Cal.App. 734, 743 [228 P. 400] [easement by prescription].) Thus, the point made in dissent—in essence that there is no evidence sufficient to create a triable issue whether defendants could repair the meter box—is erroneous. Plaintiff produced evidence that, if accepted by the trier of fact, would establish defendants' right to do so.

Naturally, the reason to hold responsible for pedestrians' injuries those adjoining landowners who modify sidewalks for their own use is that

sidewalks are common thoroughfares, and the presence of passersby is foreseeable. This case differs from *Hamelin* v. *Foulkes, supra,* 105 Cal.App. 458, in that the evidence showed the meter box was on a "well kept lawn" a few inches from the sidewalk. Presumably the lawn was not a common thoroughfare for members of the general public. But plaintiff was not a mere passerby who might be thought unlikely to tread on the lawn: he was defendants' tenant whose use of the lawn the trier of fact could find foreseeable—i.e., he was walking where he was "likely to walk." (*Steen* v. *Grenz, supra,* 538 P.2d at p. 18.)

The summary judgment motion should have been denied because of evidence that defendants controlled the whole lawn, including any part the city may have owned. In the alternative, the motion should have been denied because of evidence that defendants benefitted from a servitude in the form of a meter box on adjoining land on which it was foreseeable that plaintiff might walk. (*Hamelin* v. *Foulkes, supra,* 105 Cal.App. 458; see Civ. Code, § 801, subd. 6; see also *Wright* v. *Best* (1942) 19 Cal.2d 368, 382 [121 P.2d 702] [Civil Code section 801 does not enumerate all possible servitudes].)

**KENNARD, J.,** Dissenting.—Does a landowner who has no possessory interest in adjoining premises containing a dangerous condition, who has no legal right to control either the premises or the dangerous condition, and who did *nothing to create or aggravate the danger* have a duty to protect others from the danger? Before today the answer under California law would be "No." The majority, however, holds that persons who lack the right to control either the dangerous condition or the land on which it is located, and who have done nothing to create or increase the danger, have such a duty merely because they have conducted some unrelated activity on the neighboring land. Because the majority imposes the duty based on innocuous or good-neighborly conduct that does not contribute to the danger and therefore carries no moral blame, its expansion of tort liability runs counter to traditional notions of tort law.

I

On the night of April 17, 1990, plaintiff Gilardo C. Alcaraz walked from the public sidewalk onto a narrow strip of land located in front of the rental property where he had lived for 22 years, stepped on a broken water meter box, and was injured. Both the narrow strip of land and its water meter box belonged to the City of Redwood City (hereafter City). Alcaraz sued his

landlord, Peter Vece, seeking damages under a theory of premises liability.[1] The complaint alleged that the meter box was located on property owned by Vece at 141-147 Lincoln Avenue in the City, and that therefore Vece was legally responsible for its defective condition, which was the proximate cause of Alcaraz's injuries.[2]

Vece moved for summary judgment. He presented undisputed evidence that the City owned the strip of land containing the water meter box and maintained the box.

In opposition, Alcaraz argued that even if Vece did not own the water meter box or the land on which it was situated, Vece nonetheless had a duty to repair the broken meter box or to warn Alcaraz about its condition in light of Vece's control over the City-owned land. As indicia of such control, Alcaraz pointed to (1) the periodic mowing, by Vece's gardener, of the two-foot-wide strip of grass-covered land that was owned by the City and contained the City's meter box; and (2) Vece's construction, after the accident, of a picket fence that separated the lawn area from the public sidewalk and enclosed both Vece's land and the City's.

The trial court entered summary judgment for Vece.

## II

The majority holds that summary judgment should not have been granted because "a triable issue of fact exists" whether Vece "exercised control over the property surrounding the meter box and thus had a duty to protect plaintiff from, or warn him of, the hazardous condition of the meter box." (Maj. opn., *ante*, at p. 1161.) According to the majority, a jury could well decide that control sufficient to impose on Vece a duty to protect others from or warn them about the hazardous condition of the meter box could be established by evidence that Vece's gardener had been mowing the grass on the two-foot-wide strip of land owned by the City and containing the City's meter box, together with evidence that after the accident Vece built a picket fence around the grassy area in front of his rental property, enclosing both his land and the City's narrow strip of land. (*Id.* at p. 1170.)

The majority's holding finds no support in California case law, which until now has imposed a duty to protect others from dangerous conditions on

---

[1] Alcaraz did not sue the City and conceded at oral argument that he had not preserved his right to do so because he did not file the required claim within the statutory time. (See Gov. Code, §§ 905, 911.2.)

[2] Also named in the complaint were four additional owners of the property at 141-147 Lincoln Avenue. For simplicity's sake, I will refer to the property owners collectively as the landlord or as Vece.

land only upon those persons who (1) have the legal right to control either the premises containing the dangerous instrumentality or the dangerous instrumentality itself, or (2) created or aggravated the hazard on the land.

The general rule of premises liability is set forth in this court's decision in *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 368 [178 Cal.Rptr. 783, 636 P.2d 1121], which states that a landowner has a "duty to take affirmative action for the protection of individuals coming upon the land." This duty arises because ownership of land includes the *"right to control* and manage the premises." (*Ibid.*, italics added.) The landowner's "mere possession with its attendant *right to control* conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act." (*Id.* at p. 370, italics added.) The right to control the premises lies at " 'the very heart of the ascription of tortious responsibility' " in premises liability actions. (*Id.* at p. 369, quoting *Connor* v. *Great Western Savings & Loan Assn.* (1968) 69 Cal.2d 850, 874 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224] (dis. opn. of Mosk, J.); accord, *Preston* v. *Goldman* (1986) 42 Cal.3d 108, 118-119 [227 Cal.Rptr. 817, 720 P.2d 476].)

The "right to control" gains special significance when more than one individual has a legal interest in land containing a dangerous condition, because it provides a means of ascertaining who has the duty to warn or protect others from that condition. (See *Low* v. *City of Sacramento* (1970) 7 Cal.App.3d 826, 831 [87 Cal.Rptr. 173] [noting that "the aggregation of powers called ownership" can be divided and the "various kinds of control [can be] held in separate hands"].) In that situation, the existence of duty depends upon whether a particular interest includes the right to control that part of the premises containing the dangerous condition. (*Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 511 [118 Cal.Rptr. 741, 81 A.L.R.3d 628]; see *Johnston* v. *De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394, 399-401 [170 P.2d 5].)

For example, although the interests of a landlord and a tenant in property leased by the tenant overlap to some extent, the tenant has a present interest in the premises while the landlord has only a future reversionary interest. Therefore, the landlord's relinquishment of the rental premises to a tenant generally imposes on the tenant, not the landlord, the duty to protect others from dangerous conditions on those premises. (*Uccello* v. *Laudenslayer*, *supra*, 44 Cal.App.3d at pp. 510-511; Prosser & Keeton, Law of Torts (5th ed. 1984) § 63, p. 434 ["In the absence of agreement to the contrary, the lessor surrenders both possession and control of the land to the lessee. . . ."]; see *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119-120 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] [residential tenant liable for

dangerous condition within area of leasehold].) But when the landlord retains the right to control certain parts of rental premises (typically common areas), the law imposes on the landlord the duty to use ordinary care to eliminate dangerous conditions in the areas of retained control. (*Johnston* v. *De La Guerra Properties, Inc., supra*, 28 Cal.2d 394, 399; *Uccello* v. *Laudenslayer, supra*, at p. 511.)

In *Johnston* v. *De La Guerra Properties, Inc., supra*, 28 Cal.2d 394, this court upheld a jury verdict imposing damages on both a commercial landlord and its tenant for injuries to a patron of the tenant's restaurant who was injured in a common area of the premises, namely, a walkway leading to the restaurant's back door. This court held the landlord liable, applying the principle that a landlord who retains the right to control common areas has a duty for injuries occurring in such areas. (*Id.* at pp. 399-400.) But the tenant was also held liable, because it had a "limited right of control" over the same common area, as evidenced by its installation of a neon sign at the rear entrance beckoning patrons to use the walkway to enter the restaurant. (*Id.* at p. 401.)

In some situations, the right to control premises containing a hazardous condition or instrumentality may be found in someone who has no ownership or leasehold interest in the premises. For instance, a landowner may grant that right to an independent contractor or licensee. (See *Morehouse* v. *Taubman Co.* (1970) 5 Cal.App.3d 548 [85 Cal.Rptr. 308].) In such a case, the contractor or licensee would have a duty to protect those coming onto the land from a dangerous condition or instrumentality on the land because of the contract- or license-based right to control those premises.

In other situations, an individual's "right to control" may extend only to the dangerous condition or instrumentality itself and include no other portion of the premises, and yet the individual would have a duty to protect or warn others of the hazard because the right to control the dangerous condition carries with it "a concomitant right and power to obviate the condition and prevent the injury." (*Uccello* v. *Laudenslayer, supra*, 44 Cal.App.3d at p. 511; accord, *Connor* v. *Great Western Savings & Loan Assn., supra*, 69 Cal.2d 850, 874 (dis. opn. of Mosk, J.) [the right to control the "agency of harm" gives rise to a duty to protect others from the harm].)

As I have just explained, the right to control land or dangerous conditions on the land may exist separately from any property interest. California courts, in determining whether a duty of care exists in premises liability actions, have therefore treated a possessory interest in property with its attendant right to control the property as a concept separate from the right of

control over property that is not grounded in any possessory interest, and they have occasionally used the shorthand term "control" to denote what is more correctly described as the "right to control." (See generally, *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653] ["A defendant cannot be held liable for the defective or dangerous condition of property which it did not *own, possess, or control.*" (Italics added.)]; *Gray* v. *America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 81 [256 Cal.Rptr. 877] ["In premises liability cases, summary judgment may properly be granted where a defendant unequivocally establishes its lack of *ownership, possession, or control* of the property alleged to be in a dangerous or defective condition." (Italics added.)].) These cases do not suggest, as the majority would have it, that a person who has no possessory interest in adjoining land or who lacks the legal right to control the land or the hazardous condition on it assumes a duty to protect others against or warn them of the danger on the land, simply because of some innocuous activity that the individual performed on the neighboring land.

Rather, the general rule to be drawn from California case law is that, in premises liability actions, those who have a *right* to control either the premises containing a dangerous condition or the dangerous condition itself have a duty to correct the hazard or to warn others of it. The converse, of course, is also true. Absent the right to control either the premises or the dangerous condition, there generally is no duty to correct or to warn. (See *Gillespie* v. *City of Los Angeles* (1950) 36 Cal.2d 553, 556 [225 P.2d 522] [City of Los Angeles had no duty to post signs warning motorists of a hairpin curve on Topanga Canyon Road, and hence no liability for failing to do so, because it was a state highway over which the city had no legal authority].)

One exception to this general rule is when a person's conduct or activity on another's land causes or increases the risk from a hazardous condition on that land. In that situation, California courts have not hesitated to subject the person to liability. Thus, in *Kopfinger* v. *Grand Central Pub. Market* (1964) 60 Cal.2d 852, 859 [37 Cal.Rptr. 65, 389 P.2d 529], the operator of a butcher shop located in a large public market hall was held liable to a customer who slipped and fell on a small piece of meat dropped on the sidewalk outside the market during meat delivery. The defendant butcher shop's use of the sidewalk for commercial purposes in the course of which the hazard was created was held to give rise to a duty by the butcher shop to discover and remove the hazard. (*Ibid.*) Similarly, in *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 235-239 [60 Cal.Rptr. 510, 430 P.2d 68], a bakery was held liable for injuries to a small boy who was hit by a car as he ran across the road to catch up with the bakery truck after its driver had agreed

to wait for the child to go home and to return with money to buy an item from the truck. A duty to protect others from harm arises in cases such as these because the defendant either created the dangerous condition on someone else's property (as in *Kopfinger*), or by some affirmative conduct aggravated the danger to the plaintiff (as in *Schwartz*).

In contrast, when, as here, a defendant's conduct on another's land does not create or aggravate a dangerous condition on that land, California law imposes no duty on the defendant to protect others from the hazard. Thus, in *Hamilton* v. *Gage Bowl, Inc.* (1992) 6 Cal.App.4th 1706, 1712-1713 [8 Cal.Rptr.2d 819], the owner of a bowling alley and adjoining parking lot in which a bowling alley patron was injured when a sign fell off an adjacent building was held not to have a duty to protect the patron from the danger of the falling sign. The court noted that the owner of the bowling alley did not own either the building or the sign; therefore, the owner lacked the right to control the danger posed by the sign. It was considered irrelevant to the issue of duty that the bowling alley owner had painted the wall on the adjacent property and maintained his own advertisement on it (thus, arguably, under the view of the majority here, exercising "control" over the neighboring property containing the dangerous condition). As the court in *Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 720 [246 Cal.Rptr. 199], aptly stated: "The law of premises liability does not extend so far as to hold [a defendant] liable merely because its property exists next to adjoining dangerous property and it took no action to influence or affect the [harmful] condition of such adjoining property."

In summary, under California law persons who have the right to control premises containing a dangerous condition, or who have the right to control the dangerous condition itself, or whose conduct caused or contributed to the hazard have a duty to protect others from the hazard. Therefore, contrary to the majority's holding, our law does not impose a duty on a landowner to correct or warn of a dangerous condition on neighboring land when the landowner has no right to control that property, and did not create or aggravate the hazardous condition.

Undaunted, the majority seeks, without avail, to justify its holding by relying on two federal appeals court decisions, *Husovsky* v. *United States* (D.C. Cir. 1978) 590 F.2d 944 [191 App.D.C. 242] and *Orthmann* v. *Apple River Campground, Inc.* (7th Cir. 1985) 757 F.2d 909, and on section 328E of the Restatement Second of Torts.

The same two reasons that the California cases I discussed earlier have articulated in imposing a duty to protect—affirmative conduct creating a

hazard and a right to control the premises containing the hazard, a right that arises from a possessory interest or an agreement with one holding the possessory interest—underlie *Husovsky* v. *United States, supra,* 590 F.2d 944. That case imposed on the United States Government a duty of care to a motorist who was injured when a tree located on land belonging to the Government of India fell on his car. The land had been left in its natural state pursuant to a written agreement that the United States had negotiated with India 20 years before the accident. Therefore, the United States had in effect created the hazardous condition. In addition, the court found the existence of a "unique relationship . . . between the United States and the tract of land" containing the tree in question, based on certain acts by the United States Government indicating the right of control and supervision over the land owned by India. (*Id.* at p. 592.) These acts included "[t]he initial and subsequent surveys of the land, the agreement with India concerning the use to which it could be put, placement and maintenance by the Park Service of monuments and stakes with United States insignia . . . ." (*id.* at p. 593, fn. omitted) and "[t]he presence for over twenty years of permanent granite markers bearing the United States' insignia indicat[ing] that the Indian Government did not contest the indicia of federal control over the tract." (*Id.* at p. 953, fn. 20.)

Similarly misplaced is the majority's reliance on *Orthmann* v. *Apple River Campground, Inc., supra,* 757 F.2d 909 (hereafter *Orthmann*). In that case, the plaintiff sued certain businesses located on the Apple River for injuries he sustained when diving into the river. The businesses were engaged in a joint venture, the Floater's Association, that rented out inner tubes for floating down a four-mile stretch of the river; members of the association owned most of the land on both sides of that stretch of the river. The plaintiff rented an inner tube, but interrupted his floating to go ashore at a spot belonging not to the association but to the Montbriand family. A tree on the property that grew out over the river was a popular location for diving. When the plaintiff arrived at the tree, several others were waiting to dive from it, so the plaintiff dived from the riverbank instead and was injured. (*Id.* at pp. 910-912.)

To decide whether the plaintiff's complaint stated a negligence claim under Wisconsin law, the federal appeals court in *Orthmann* first posited that the Floater's Association, by advertising its inner tube rental to potential customers, had issued an implied invitation for persons renting inner tubes "to use the tree and surrounding land for diving into the river." (*Orthmann, supra,* 757 F.2d at p. 913.) The court reasoned that under these circumstances the association would be "prima facie liable" if it owned the land where the diving took place. (*Ibid.*) The plaintiff's complaint, the court

concluded, was sufficient to satisfy the liberal federal pleading requirements based on statements in a supporting affidavit that, after the accident, an association member had gone onto the riverbank of the Montbriand property without permission and cut down the tree. The federal court held that even though the defendants did not own the part of the riverbank from which the plaintiff dived into the river, it was possible to infer from the tree-cutting activity that they had "treated it as if they did." (*Ibid.*)

Therefore, under *Orthmann*, a duty of care arises only when a landowner either creates a dangerous condition on neighboring land or encourages a particular use of that land resulting in the plaintiff's injury. (*Orthmann*, *supra*, 757 F.2d at pp. 913 [discussing the association's encouragement of diving as part of the basis for imposing a duty of care on its members], 914 [giving two examples of when treatment of neighboring land as one's own could give rise to liability, one involving the landowner's *creation of* a dangerous pothole on adjoining land and the other in which the landowner *encouraged a particular use* of adjoining land that exposed the plaintiff to the dangerous condition].) Here, Vece neither created the hazard posed by the City's broken water meter box nor encouraged a particular use of the City's land leading to plaintiff's injuries.

According to the majority, "[i]t would be anomalous to conclude that a person who wrongfully takes possession of land owned by another, exercising control over that land, cannot be held liable for injuries caused by a dangerous condition of the property." (Maj. opn., *ante*, at p. 1159, fn. 3.) The majority equates "exercising control" over adjoining land with "possession" of land. In support, the majority cites to Restatement Second of Torts section 328E, which defines the term "possessor of land" to include "a person who is in occupation of land with intent to control it" and to section 328E's comment a, which states that "[t]he important thing in the law of torts is the possession, and not whether it is or is not rightful as between the possessor and some third person." (See maj. opn., *ante*, at p. 1159.) Upon close examination, however, section 328E and comment a have no application here. Ignored by the majority is the next sentence to comment a explaining that under section 328E, a person who occupies land with intent to control it can be a possessor with a duty to protect others coming upon the land only if that person is a "disseisor," that is, someone in the process of gaining ownership of another's land through the legal doctrine of adverse possession. (Rest.2d Torts, § 328E, com. a, p. 171 ["Thus a disseisor is a possessor from the moment that his occupation begins, although as between the disseisor and the true owner he is not legally entitled to possession until his adverse possession has ripened through lapse of time into ownership."]; and

see 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 93, p. 318 [explaining how title is gained through "disseizen"].)[3]

In order to occupy another's land with the intent to control it for purposes of gaining title through adverse possession, a person must exercise dominion over the property in such a way as to put the true owner on notice that the person claims a right, title and interest in the land. (4 Witkin, Summary of Cal. Law, *supra*, Real Property, § 96, p. 320; *id.*, § 104, pp. 323-324.) The claim of right must be "hostile" to the possessory rights of the true owner. Therefore, "[i]f the owner permits the person to use the land, the possession is not adverse." (*Id.*, § 97, p. 321.) Furthermore, the hostile occupancy under a claim of right must continue uninterrupted for a full five-year period (Code Civ. Proc. §§ 318, 319, 325; 4 Witkin, *supra*, Real Property, § 108, p. 328), during which time the disseisor must have paid all taxes levied or assessed on the property (Code Civ. Proc., § 325; 4 Witkin, *supra*, Real Property, § 110, p. 330). Understood in light of these substantial preconditions for gaining title to land through adverse possession (none of which is satisfied in this case), section 328E of the Restatement Second of Torts does not support the majority's expansive and unprecedented holding that when, as here, a landowner performs innocuous or good-neighborly activity on neighboring property, he or she may be said to "exercise control" over that land, thus warranting imposition of a duty to protect or to warn others of dangers on that land.[4]

In its eagerness to impose liability where none existed before, the majority does not even bother to consider the test this court articulated in *Rowland* v. *Christian*, *supra*, 69 Cal.2d 108, 113, in determining the existence of duty. Pertinent are such considerations as the closeness of the connection between

---

[3]The majority asserts that under comment a to section 328E, any conduct that can be construed as an act of control can give rise to a duty. (Maj. opn., *ante*, at p. 1159, fn. 3.) The majority is wrong. Comment a gives only one illustration of a person occupying land with the intent to control it: a person in the process of gaining ownership through the legal doctrine of adverse possession. Comment a thus seems directed at those who occupy land with intent to control it for all purposes, that is, those who exercise the degree of control required for adverse possession. Moreover, even assuming that something less than an ongoing effort to gain ownership through adverse possession might qualify as occupation of another's land with the intent to control it within the meaning of section 328E, nothing in comment a suggests this could include innocuous or good-neighborly activity such as a landowner's mowing of a small strip of adjoining land, as involved here.

[4]This court has never adopted section 328E of the Restatement Second of Torts as the law of California, and I can see no reason to do so in this case. Not only are the facts here wholly insufficient to constitute a hostile, open and notorious occupation of the City's land under a claim of right, but the property on which the activity took place belongs to a public entity (the City) and therefore a disseisor may not gain title to it by adverse possession. (Civ. Code, § 1007 [public land not subject to adverse possession]; 4 Witkin, Summary of Cal. Law, *supra*, Real Property, § 94, pp. 319-320 [same].)

the plaintiff's injury and the defendant's conduct, the moral blame attached to the defendant's conduct, advancement of the public policy of deterring or preventing future harm, the extent of the burden to the defendant and the consequences to the community in imposing a duty to exercise care and subjecting the defendant to liability for breach of the duty, and the availability of insurance. These factors weigh against the majority's imposition of a duty of care here, as I explain below.

When, as here, a plaintiff suffers injury from a dangerous condition on land over which the defendant has no right of control, and the defendant's innocuous or good-neighborly activity on that land neither created nor aggravated the hazard, there is no nexus between the plaintiff's injury and the conduct of the defendant. Therefore, the defendant bears no moral blame. Nor would imposition of liability in this circumstance advance society's interests in punishing wrongdoers and in preventing future harm; instead, it would discourage individuals from undertaking socially beneficial actions on neighboring property or turn those who do so into guarantors of the safety of others coming onto the adjoining property. Furthermore, persons lacking any lawful interest in the premises containing a hazardous condition have no insurable interest in those premises. Accordingly, consideration of the various factors set forth in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, 113, do not support the creation of a duty of care in this case.[5]

### III

The majority's holding suffers from yet another serious flaw. The majority leaves it to the jury, on a case-by-case basis, to decide as "a triable issue of fact" the issue of when a landowner has "exercised control" over adjoining property so as to give rise to a duty of care. (Maj. opn., *ante,* at p. 1153.) But the majority never explains what it means to "exercise control" over adjoining premises. Pity the poor trial judge who after today's decision will have to fashion a jury instruction on this point.

Furthermore, the majority claims that leaving this decision for the jury is entirely consistent with the rule that the existence of duty is a question of

---

[5] I am not persuaded by Justice Mosk's proposal that adjoining landowners should have a duty of care with regard to any "appurtenances" (conc. opn. of Mosk, J., *ante,* at p. 1173) that provide some benefit to their property, such as " 'coal holes, meter boxes, and other devices of similar character located in the sidewalk which benefit the abutting owner . . . .' " (*Ibid.*) Like the majority, Justice Mosk fails to take into account the policy considerations enunciated in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, 113, in determining the existence of a duty. For reasons I have fully articulated earlier, I cannot agree that someone who lacked the right to control a defective appurtenance on adjoining land and who did not create or increase the hazard should nevertheless be held liable for the harm posed to others.

law to be decided by a court. (Maj. opn., *ante,* at p. 1162, fn. 4; see generally, *Knight* v. *Jewett* (1992) 3 Cal.4th 296, 313 [11 Cal.Rptr.2d 2, 834 P.2d 696]; *Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624]; see also *Kentucky Fried Chicken of Cal., Inc.* v. *Superior Court* (1997) 14 Cal.4th 814, 832 [59 Cal.Rptr.2d 756, 927 P.2d 1260] (dis. opn. of Kennard, J.) ["Whether a defendant has a duty to use reasonable care to avoid harm to the plaintiff is decided as a matter of law . . . ."].) But it is not. When facts are not in dispute, deciding whether those facts give rise to a legal duty is a question for the court rather than the jury. (Rest.2d Torts, § 328B, subd. (b), p. 151; *id.,* com. e, p. 153; Prosser & Keeton, Law of Torts, *supra,* § 37, at p. 236 ["whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other . . . . is entirely a question of law . . . [to] be determined only by the court"]; *Mozingo by Thomas* v. *Memorial Hosp.* (1991) 101 N.C.App. 578 [400 S.E.2d 747, 753] ["When there is no dispute as to the facts . . . the issue of whether a duty exists is a question of law for the court."]; *Gabrielson* v. *Warnemunde* (Minn. 1989) 443 N.W.2d 540, 543, fn. 1 [88 A.L.R.4th 237] ["It is not . . . the jury's function to determine whether the facts give rise to a duty. Rather, the jury's role is to resolve disputed facts, upon which the court then determines whether a duty of care exists."].) Here, there is no dispute that Vece's gardener periodically mowed the grass on the City's two-foot-wide strip of land containing the City's water meter, and that Vece, after the accident, built a picket fence that enclosed both his land and the City's, separating the entire lawn from the public sidewalk.

The majority denies that "the simple act of mowing a lawn on adjacent property (or otherwise performing minimal, neighborly maintenance of property owned by another) *generally* will, standing alone, constitute an exercise of control over property and give rise to a duty to protect or warn persons entering the property." (Maj. opn., *ante,* at p. 1167, italics added.) But the majority never decides whether the occasional mowing of the City's adjacent narrow strip of land by Vece's gardener *in this case* is the type of "minimal, neighborly maintenance of property owned by another" that will not give rise to a duty. Thus the majority leaves open the possibility that a jury here and in future cases may well decide that just such minimal, neighborly acts do establish control over adjoining property sufficient to give rise to a duty to prevent harm.

With regard to Vece's construction of a picket fence, that action took place *after* the accident in this case. In the majority's view, evidence of the fence building is relevant to the issue of Vece's control over the City property *before* the accident. Even under the rule that the majority announces today, however, that evidence has no relevance, as I discuss below.

Under that rule, a landowner with no legal interest in adjoining property has a duty to protect others from harm on that property if the landowner has exercised "control" over that property. Logically, that duty can come into existence only after the defendant has begun the conduct that constitutes such control. When, as here, the defendant *after* occurrence of the harm on the neighboring property engages in some new activity on that property, the new activity has no "tendency in reason to prove or disprove" (Evid. Code, § 210) that *before* occurrence of the harm the defendant had engaged in conduct sufficient to constitute control over the adjacent property.

In arriving at a contrary conclusion, the majority relies on a decision by the Court of Appeal in *Morehouse* v. *Taubman Co.*, *supra*, 5 Cal.App.3d 548. In *Morehouse*, a contract allocated responsibilities at a jobsite between the general contractor and the subcontractor. At issue was which of the two had the contractual right of control over a specific safety requirement. Because the question was one of contractual intent, one party's assumption of control of that safety requirement after an accident was held to be indicative of that party's understanding that it had the obligation all along. Here, however, the issue is not one of contractual or any other form of intent, but the *actual* control by Vece over the City's land and the water meter box on that land *before* the accident.

Even if Vece's construction of the picket fence were relevant under the majority's test, I doubt the wisdom of a rule permitting judicial consideration of after-the-fact conduct as a basis for determining the existence of control before the occurrence of the harm. Such a rule discourages a landowner who learns of an accident involving a dangerous condition on neighboring property from taking any remedial steps to protect others from the hazard, because it might expose the landowner to civil liability on the theory that his or her postaccident conduct established control over the adjacent premises.

CONCLUSION

Unlike the majority, I would hold that a landowner who has no possessory interest in adjoining property containing a dangerous condition, who has no legal right to control the neighboring premises or the dangerous condition, and whose innocuous, good-neighborly activity on that property has neither caused nor increased the hazard thereon, has no duty to prevent harm to others.

Applying this approach to the undisputed evidence that Vece offered in support of his motion for summary judgment, I conclude that Vece had no duty to protect others against the harm posed by the City's broken water

meter box on City-owned land. Vece had no legal interest in or right to control the City's meter box located on the City land running along the front of Vece's rental property. Furthermore, plaintiff Alcaraz never alleged that Vece caused or aggravated the danger posed by the City's broken water meter box. Therefore, Vece established the absence of duty (an essential element of plaintiff's case), thereby entitling him to summary judgment. (*Sprecher* v. *Adamson Companies, supra,* 30 Cal.3d at p. 362; *Gray* v. *America West Airlines, Inc., supra,* 209 Cal.App.3d at p. 81.)

The majority in this case adopts an ill-conceived and unprecedented expansion of tort liability. By untethering tort liability from either the existence of any legal right to control the property or conduct that creates or aggravates the harmful condition, the majority unduly expands both the scope and uncertainty of negligence liability. A person's innocuous or good-neighborly acts on the land of another (for example, mowing a lawn, planting flowers, or regularly picnicking) can now make him or her liable to anyone coming on that land, even though there is no causal connection between the acts and the subsequent injury. Nor can anyone be certain just what acts on the land of another will amount to sufficient "control" so as to lead to liability, because all such questions will henceforth be decided by the jury on a case-by-case basis.

Under the majority's rule, defendant Vece would have been better off and not subject to liability if instead of mowing the City's adjoining strip of land, he had left it in its natural state, unkempt and a blight on the neighborhood.

I would reverse the judgment of the Court of Appeal and reinstate the trial court's grant of summary judgment for Vece.

**BAXTER, J.**—I respectfully dissent. In doing so, I agree with many of the criticisms leveled against the majority opinion by Justices Kennard and Brown. As they suggest, the majority have created a new, vague, dangerous, and unreasonable form of premises liability against persons who merely volunteer for limited caretaking activities on their neighbors' land. The limits of the rule applied by the majority are not clearly articulated, and the majority's recognition of possible liability in this case cannot be justified under the balancing test pertinent to the existence of a tort duty, as set forth in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].

I write separately only because I am uncertain that either of the other dissenting opinions has isolated the precise principles which negate defendants' duty in this case. Indeed, as the multiple opinions themselves demonstrate, the numerous authorities governing premises liability permit differing

shades of interpretation. However, we need not develop a "universal theory" on this subject in order to conclude, as a matter of law, that the instant defendants are not liable for the injury suffered by plaintiff Gilardo C. Alcaraz.

It is clear that one has no affirmative responsibility for the safety of property he or she does not "own, possess, or control." (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].) Rather, "the duty to take affirmative action for the protection of individuals coming on the land is grounded in the *possession* of the premises *and the attendant right to control and manage the premises*." (*Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 368 [178 Cal.Rptr. 783, 636 P.2d 1121], italics added.) Unless one's possessory relationship to premises on which an injury occurred was sufficient to imply "control and supervisory power" over the cause of injury (*ibid.*), one cannot justly have assumed a "manage[ment]" duty to remedy or warn against a danger which one neither caused nor aggravated.

In determining whether occupiers of land should be liable for harm arising on adjacent property for which they disclaim possessory responsibility, the courts have considered numerous case-specific factors to decide whether the requisite power and duty to "supervis[e]" and "manage" the safety of the adjacent premises has fairly arisen. However, given the extreme facts before us, it is unnecessary here to reconcile every arguable ambiguity and inconsistency.

At the very least, nothing in the case law described at length by the majority and the dissents of Justices Kennard and Brown suggests that a person owes a duty to protect or warn against hazards which arise exclusively on the premises of another, and to which premises the danger is confined, when the person neither (1) caused or aggravated the dangerous condition, *nor* (2) holds any legal right of "supervisory" possession and control over the premises or the hazard, *nor* (3) has engaged in conduct suggesting the "de facto" assertion of such "supervisory" possession and control, *nor* (4) has derived any direct benefit which is linked to the hazard, *nor* (5) is vested with authority to remedy the specific danger. Indeed, there are no fair or rational grounds for imposing a duty of safety management on one who has *none* of these connections to the dangerous condition or the premises on which it is located.

We need go no further to decide this case. Even under the minimum standard I have just described, the instant trial court's summary judgment for defendants was correct.

The undisputed facts are that plaintiff was injured when, while walking on a strip of land owned by the City of Redwood City (City), he tripped on a broken water meter, which was also owned by the City and was located entirely on the City-owned strip. While defendants owned closely adjacent premises, the broken meter posed no danger to persons on defendants' land. Conversely, defendants had no legal rights of possession and control in either the City-owned strip or the defective meter itself, which gave them supervisory and management powers over those areas.

Moreover, there is no evidence or argument that defendants derived any direct economic benefit from the City-owned strip, or from the broken meter itself. It is undisputed that defendants were not responsible for either the existence or the degree of the danger on premises they did not legally own, possess, or control. Nor is there the slightest evidence that defendants contributed to the danger by encouraging persons to traverse the area where the hazard was located. Of course, plaintiff does not contend that defendants had any authority to repair the broken meter, which was operated and maintained solely by City.

The majority nonetheless hold that there is a triable issue of defendants' duty at least to warn of the danger, or to cordon it off. The majority's conclusion seems premised on the notion that by their conduct, defendants asserted, de facto, *some form* of "control" over the City-owned strip. Accordingly, the majority reason, a trier of fact should be free to hold defendants generally responsible for the reasonable safety of that area.

Like Justices Kennard and Brown, I disagree. Prior to plaintiff's injury, defendants' sole relationship to the premises on which plaintiff was injured —other than the adjacent nature of their own land—was that they mowed the lawn on the City-owned strip at the same time they mowed their own.

Contrary to the majority's assertion, this evidence has no "tendency in reason" (Evid. Code, § 210) to prove that defendants asserted de facto "control" over the City-owned strip *of a degree and nature* which might impose a general duty to supervise and manage its safety. As Justice Kennard suggests, the mere fact that one enters his neighbor's land from time to time, in order to conduct limited volunteer caretaking activities which have no relationship to hazardous conditions on the premises, obviously does not imply an assumption of *supervisory control* over all such hazards, with the attendant duty to manage them safely. To conclude otherwise, as the majority do, is both illogical and unfair. Such a conclusion is also bad public policy. Under facts like those presented here, the majority's rule will discourage communitarian efforts to maintain the appearance of a neighbor's neglected land.

Indeed, the majority ultimately concede the weakness of their analysis. "[S]tanding alone," they acknowledge, evidence that a landowner mowed his neighbor's lawn would "generally" not establish "control" sufficient to impose a duty of safe management of the neighbor's premises. (Maj. opn., *ante*, at p. 1167.) Hence, the majority bootstrap their result by holding additionally relevant and admissible, on the issue of "control," the fact that *after* the accident in which plaintiff was injured, defendants fenced in the lawn, including the City-owned strip.

But even if postinjury conduct at the scene of an accident may *sometimes* be relevant and admissible on a disputed issue of "control" of the site, that principle is not logically applicable here. *Morehouse* v. *Taubman Co.* (1970) 5 Cal.App.3d 548 [85 Cal.Rptr. 308], the primary authority cited by the majority for this theory, illustrates its proper limits. There, the injured employee of a subcontractor simply sought to show that the general contractor, *who was jointly involved at the site in the project which caused the injury*, had not relinquished all "control" of workplace safety conditions at the point where the subcontractor's employee had fallen from a wall. The employee presented evidence that the general contractor maintained a policy of installing guardrails around unprotected areas of similar elevation throughout the project area, and had placed such a guardrail at the site of the employee's injury after he fell. This evidence was properly received, said the Court of Appeal, on the issue of control of the premises, "and as to whose duty it was *under the contract* to take such safety measures. [Citation.]" (*Id.* at p. 555, italics added.)

Thus, in *Taubman*, the very nature of the business relationship between two contractors created inherent uncertainty about the degree of responsibility for workplace safety retained by each in their joint efforts on the contracted project. Evidence that one or the other actually undertook safety duties on the site, both before and after the accident, was therefore probative on that issue.

*Orthmann* v. *Apple River Campground, Inc.* (7th Cir. 1985) 757 F.2d 909 is to similar effect. There, the court deemed relevant, on the issue of duty, the fact that defendants had entered another's property without permission and cut down a tree thereon which had caused a swimming injury to defendants' inner tube rental customer. However, the tree-cutting evidence was but one of numerous indications that, both before and after the accident, defendants had incorporated the property on which the tree was located as a recreational attraction of their business and, although they did not own the property, had "treated it as if they did." (*Id.* at p. 913.)

Here, by contrast, there is *no other basis* for an inference that, *at the time of plaintiff's accident*, defendants maintained any relationship with the City-owned strip or the defective meter which implied responsibility for safe

management of that hazard. Under these circumstances, evidence of their later understandable response to plaintiff's accident has no logical power either to create or to bolster such an inference.

In sum, evidence that defendants mowed the City-owned strip, and that they fenced the property after the accident, even when considered in combination, is not sufficient to create a triable issue that they asserted "supervisory" possession and control of the strip, thereby assuming a duty to protect or warn against a City-owned hazard on that land. It follows that the trial court did not err in awarding defendants summary judgment. (See *Sprecher* v. *Adamson Companies, supra,* 30 Cal.3d 358, 362.) Like Justices Kennard and Brown, I would therefore reverse the contrary judgment of the Court of Appeal.

**BROWN, J.,** Dissenting.—This case should be governed by the venerable judicial maxim: "[I]f it ain't broke, don't fix it." Unfortunately, the majority fails to heed this sensible advice, and today's decision drastically enlarges the potential tort liability of thousands of California homeowners.

Until now both the rules for finding a duty and the rationale for imposing adjacent premises liability have been reasonably clear. The existence of "duty" is a question of law. (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].) Legal duties are not discoverable facts of nature; they are limiting principles designed to reduce potentially infinite liability to manageable proportions. (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) Until today, the imposition of a duty was ultimately a question of fairness.

Thus, property owners are liable for injuries on land they own, possess, or control; they are liable for injuries on adjacent property if their active negligence created an external effect which led to the injury; but when they have not created the external hazard and, as in this case, the question of control cannot be cleanly resolved, courts have prudently required an additional prerequisite for liability. In cases where the landowner or tenant *might* be liable for off-premises injuries, courts require evidence of substantial control, a clearly derived benefit from the use of the particular area that caused plaintiff's injury, or some combination of control and benefit. Although not always articulated in the cases implicitly applying them, the logic of these rules provided a rational and intelligible basis for finding or rejecting liability in adjacent premises cases. Until today.

The majority opinion abrogates these essential limits. It jettisons the requirement that the defendant property owner derive a benefit directly from

the plaintiff's use of the adjacent area where the injury occurred and, that restraint on liability removed, posits the liability of *all* property owners for injuries sustained on land over which, as this case pointedly demonstrates, they exercise only the most insubstantial cosmetic "control." As if to underscore the limitless reaches of its holding, the majority leaves the legal question of whether any duty exists to the jury.

I

A

Two recent opinions of the Court of Appeal—both of which found landowners *not* liable for off-premises injuries and which the majority now peremptorily disapproves as precedent—illustrate the essential conditions for tort liability in the typical adjacent landowner case. In *Swann* v. *Olivier* (1994) 22 Cal.App.4th 1324 [28 Cal.Rptr.2d 23] (hereafter *Swann*), the Fourth District Court of Appeal affirmed a summary judgment in favor of a homeowners association the plaintiff sought to hold liable for injuries sustained in rough surf along a stretch of beach near San Clemente. The plaintiff, one of a party of birthday celebrants visiting a beach owned by the association, was injured while in the " 'surf' of the public ocean, seaward of the mean high tide line that marks the border" of the association's private property with the waters of the Pacific. (*Id.* at p. 1327.) He sued the association, alleging it had breached a duty to warn him of the dangerous condition of the surf. After the trial court granted defendants' motion for summary judgment, the plaintiff appealed.

A unanimous Court of Appeal affirmed. Starting from "the commonsense rule that one generally cannot be liable, as a landowner, for injuries that occur on property outside one's ownership, possession or control" (*Swann*, *supra*, 22 Cal.App.4th at p. 1329), Justice Sills went on to invoke the "corollary . . . that a landowner has no duty to warn of dangers beyond . . . her own property when the owner did not *create* those dangers." (*Id.* at p. 1330, italics in original.) The rule of landowner *nonliability* for off-premises injuries, the court said, is subject to only two exceptions. "Landowners or businesses have been held liable for injuries not technically on their 'premises' when: [¶] (1) they imposed or created some palpable external effect on the area where the plaintiff was injured; or [¶] (2) they received a *special commercial benefit* from the area of the injury *plus* had *direct or de facto control* of that area." (*Ibid.*, italics added.)

"The first exception," the *Swann* court wrote, "needs no elaboration. Obviously one cannot leave a banana peel on a public sidewalk and escape

liability to the pedestrian who slips on it because one does not own the sidewalk." (*Swann, supra,* 22 Cal.App.4th at p. 1331, fn. omitted.) "The second category is commercial in nature. A review of five of the cases in this category shows that they are predicated on the ideas of 'creation' and 'control,' which can extend beyond the strict perimeters of the area to which one has title or a leasehold interest." (*Ibid.*) The *Swann* opinion went on to analyze in detail the five selected cases in which landowner liability had been upheld—including two relied on in the majority opinion, *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232 [60 Cal.Rptr. 510, 430 P.2d 68], and *Johnston* v. *De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394 [170 P.2d 5]—before concluding that they "all arose in commercial contexts, where the defendants received direct pecuniary benefits from the plaintiff's use of the areas where the plaintiffs were injured." (*Swann, supra,* 22 Cal.App.4th at p. 1333.)

"Moreover," the Court of Appeal continued, "the defendants either directly created the risk (*Schwartz*) or exercised direct (*Johnston*) or de facto (*Kopfinger* [v. *Grand Central Pub. Market* (1964) 60 Cal.2d 852 (37 Cal.Rptr. 65, 389 P.2d 529)], *Johnston* and *Southland* [*Corp.* v. *Superior Court* (1988) 203 Cal.App.3d 656 (250 Cal.Rptr. 57)]) control over that area." (*Swann, supra,* 22 Cal.App.4th at p. 1333.) Applying these liability rules to the facts before it, the Court of Appeal in *Swann* concluded that "[b]ecause there was no commercial benefit to the defendants, nor creation or control by them of the hazards in the precise area where the injury occurred, we hold defendants owed no duty to warn the plaintiff of the dangerous condition of the ocean beyond their private beach." (*Ibid.,* fn. omitted.)

## B

As an even more recent opinion by the First District Court of Appeal makes clear, the liability of landowners for injuries sustained on adjacent property requires proof of *both* a direct (or "special") commercial benefit to the abutting landowner *and* "possession or control"; neither condition is sufficient alone. In *Princess Hotels Internat., Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 645 [39 Cal.Rptr.2d 457] (hereafter *Princess Hotels*), a vacationing couple, staying at the defendant's Acapulco hotel, went swimming in the adjacent ocean. Caught in a sudden undertow, large waves, and riptide currents, the plaintiff was seriously injured and her companion drowned. In the ensuing negligence and wrongful death actions, the trial court denied the hotel's motion for summary judgment on the ground that it had " 'commercially benefit[ed] from the adjacent beach,' " purportedly distinguishing *Swann, supra,* 22 Cal.App.4th 1324. (*Princess Hotels, supra,* 33 Cal.App.4th

at p. 648.) The Court of Appeal issued a writ of mandate directing the trial court to enter summary judgment for the hotel.

Building on the opinion in *Swann, supra,* 22 Cal.App.4th 1324, Justice Peterson wrote that "[t]he present case seems to be *Swann* once removed: This is a suit against private adjacent landowners whose property abuts a public beach—owned and controlled by the Mexican government—in turn abutting the uncontrollable ocean. *Swann* provides compelling authority that the [defendant hotel owner] had no duty to warn as a matter of law." (*Princess Hotels, supra,* 33 Cal.App.4th at p. 650.) "One must be sensitive," the opinion in *Princess Hotels* observed, "to the obvious fact that the hotel does substantially commercially benefit from its oceanfront premises, and that the proximity of the Pacific Ocean no doubt draws substantial numbers of paying guests. The argument that because of this commercial benefit the hotel bears a duty to warn its guests of the ocean's dangers simply ignores the law of this state. The California cases, as correctly analyzed by *Swann,* require *control* as well as a commercial benefit; and the ocean is simply not within the control of humankind." (*Princess Hotels, supra,* 33 Cal.App.4th at pp. 651-652, italics in original.)

## C

These two recent opinions do not stand alone. They build on a thick strand of precedent whose persistent (if not always articulated) theme is the commonsense requirement that before one can be liable for injuries sustained on land she does not own, the defendant must have exploited the adjacent premises in a way that was not only "direct," "special," or "unique," but carried with it an advantage arising out of the *plaintiff's use* of the very feature of the adjacent property that led to the injury. Where these prerequisites are met, the duty properly applies even though the defendant has no ownership or possessory interest in the adjacent property, and only exercises "control" over part of it. As the cases demonstrate, however, the precise nature of the "control" necessary to support the possibility of tort liability differs markedly from the control exercised by one who owns or possesses real property.

The majority's response to these reasoned analyses is simply to sweep aside these limiting principles as "dicta," and to disapprove the language in *Swann, supra,* 22 Cal.App.4th 1324, and *Princess Hotels, supra,* 33 Cal.App.4th 645, that presents an obstacle to its result. (Maj. opn., *ante,* at pp. 1164-1166.) However, as the *Swann* opinion convincingly demonstrates, the handful of reported adjacent premises cases in which the landowner has been held liable for injuries sustained on property the defendant did not own

can only be rationally explained by the fact that the defendant obtained some tangible, substantial benefit from a feature of the adjacent property that caused the plaintiff's injury.

As the Court of Appeal's opinion in *Swann, supra,* 22 Cal.App.4th 1324, put it, the governing liability rule in these cases requires that the defendant landowner "receive[] *direct pecuniary benefits from the plaintiff's use of the areas* where the plaintiffs were injured." (*Id.* at p. 1333, italics added.) It is not enough that the plaintiff was injured on adjacent property whose features may otherwise have provided some incremental advantage to the defendant, however attenuated, and it is certainly not sufficient that the defendant obtained *no* benefit whatever from the adjoining property. Rather, liability in this handful of cases is grounded in some characteristic of the adjacent property whose use by the plaintiff *directly benefited* the defendant.

Viewed from that perspective, the cases upholding landowner tort liability for injuries on property the defendant does not own or possess comprise a limited and coherent exception to the general rule of nonliability. In *Southland Corp.* v. *Superior Court* (1988) 203 Cal.App.3d 656 [250 Cal.Rptr. 57], for example, the plaintiff patron's use of an adjacent lot in which to park his car directly benefited the defendant convenience store owner—additional customers and revenue were the direct result—*and* it was the plaintiff's use of the parking lot that led to his injuries. In *Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d 394, the plaintiff fell on an unlit private walk leading to defendant's restaurant, a passageway that had been used by restaurant patrons as a convenient means of entry. Again, the plaintiff's use of the precise area where the injury occurred—the adjacent walkway— directly benefited the defendant's business. In *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d 232, the defendant bakery directly benefited from the plaintiff's use of a public street to reach the defendant's bread truck. And in *Ross* v. *Kirby* (1967) 251 Cal.App.2d 267 [59 Cal.Rptr. 601], the plaintiff was injured when she fell on a low-lying drainage berm the defendant restaurant owner had invited his customers to cross in order to use a rear entrance to his business, clearly another instance in which the property owner obtained a direct and business-related benefit from the very feature of the adjacent property that contributed to the plaintiff's injuries.

Indeed, *every case* relied on by the majority as upholding landowner liability for injuries sustained on adjacent property involved just such a "direct" commercial benefit. In none did the court uphold tort liability absent a palpable advantage to the defendant from the plaintiff's use of a feature of the adjacent property that caused the injury. Each of these cases involved uncertainties about the "control" the defendant landowner exercised over the adjacent property.

In *Southland Corp.* v. *Superior Court, supra,* 203 Cal.App.3d 656, 666-667, for example, the Court of Appeal relied on a combination of seven factors to uphold the store owner's tort liability for injuries its customer suffered after being beaten in the adjacent parking lot. *None* of these factors included outright ownership, possession *or control* of the parking lot. But what the court called an "apparent" nonexclusive right to use the lot for customer parking, *together* with limited parking on defendant's premises, knowledge that customers regularly used the lot, a failure to take action to discourage such use, an obvious commercial benefit from the additional customer parking, and repeated problems with juvenile loiterers, led the court to conclude that the issue of "control" should not "be resolved solely by reference to a property boundary line and the fortuitous circumstance" that the plaintiff was attacked a few feet beyond the boundary line. Instead, although the Court of Appeal could "not conclude that these circumstances establish that [defendants] did exercise control over the adjacent lot," in combination they were sufficient to send the case to the jury. (*Id.* at p. 667.)

In *Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d 394, the tenant restaurant owner had encouraged his patrons to park in an adjacent service station lot, gaining access to the restaurant by walking across a narrow "parkway" and stepping down a few inches from a low wall onto a private walk leading directly to a side entrance. The plaintiff customer misjudged the height of the wall one night and, stepping into darkness, fell and broke her hip. This court reversed a judgment of nonsuit and held that the plaintiff's evidence supported a finding that the restaurant tenant was negligent, despite the fact that the injury occurred on that part of the premises he neither leased nor occupied. The plaintiff presented evidence, we said, "that the tenant . . . assumed some responsibility for, and exercised control over, the means of lighting the approaches to the side entrance . . . ." (*Id.* at p. 401.) By installing a neon sign a few feet above a single light illuminating the side entrance, and connecting the sign and the light to a common switch, a jury could have found that the restaurant operator "had a limited right of control over this portion of the premises and of the means of illuminating the entranceway," knew of the attendant danger at night, and failed to warn business visitors of the risk. (*Ibid.*)

In *Ross* v. *Kirby, supra,* 251 Cal.App.2d 267, the back door to defendant's restaurant fronted directly onto an adjoining public parking lot, and three feet from "an irregularly shaped asphalt drainage berm" paralleling defendant's building; half of the berm's four-inch width lay on city-owned property, the other half on the property adjoining defendant's lot. (*Id.* at p. 268.) Relying on *Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d 394, the Court of Appeal affirmed a judgment of liability against the restaurant

operator. Why? Not because defendants "controlled the walkway," but because they "knew the berm was present and by the location of the back door, invited the general public to enter from the parking lot. Thus, they derived a special benefit apart from the ordinary and accustomed use of the walkway." (*Ross* v. *Kirby, supra,* 251 Cal.App.2d at p. 270.) The court also relied on substantial evidence that the berm could not be seen because the white paint the city had applied to it had worn off that part paralleling defendant's restaurant, a condition supporting "a logical inference . . . that the foot traffic from the parking lot to the back door of the restaurant caused the paint to wear off." (*Id.* at p. 271.)

We relied on *Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d 394, and *Ross* v. *Kirby, supra,* 251 Cal.App.2d 267, among other cases, in *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d 232, where we summed up—and even may have broadened—the liability rule at work in these cases. The plaintiff, a child of four acting at the suggestion of the defendant bakery truck driver to meet him up the street to buy a doughnut, was struck by an automobile as he crossed in the middle of the block. We reversed a judgment of nonsuit, stating, in pre-*Rowland* v. *Christian* language (*Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]), that "[a]n invitor bears a duty to warn an invitee of a dangerous condition existing on a public street or sidewalk adjoining his business which, because of the *invitor's special benefit, convenience, or use* of the public way, creates a danger." (*Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d at pp. 239-240, fn. omitted, italics added.) Although Justice Tobriner's opinion for the court asserted that "[t]he crucial element" on which liability depends "is control" (*id.,* at p. 239), it is evident from the facts of the case that "control" in any meaningful sense has all but disappeared from the liability equation. It is replaced by the defendant's knowledge of "a dangerous condition existing on a public street or sidewalk adjoining [defendant's] business." (*Ibid.*) This was so, the court in *Schwartz* reasoned, because the "premises may include such means of ingress and egress as a customer may reasonably be expected to use." (*Ibid.*)

In each of these cases, the equivocal character of the defendant property owner's actual "control" over the adjacent property was supplemented—and occasionally replaced—by the commonsense perception that, because the defendant had derived a direct, business-related benefit from the use made by the plaintiff of the very feature of the adjoining property that led to the injury in suit, tort liability was properly a matter for the trier of fact to determine. However rough-and-ready it may appear in theory, this reading of the case law has an instinctive appeal. Imposing liability on a property owner for injuries sustained on adjoining land seems sound in these cases

not so much because the defendant exercised "control" over the adjacent property in the same sense an occupier "controls" land she owns or leases, but because the nexus between the plaintiff's injury, the causal role of some feature of the adjoining property, and the related benefit to the defendant property owner, make liability appropriate.

Thus the formulation by the Court of Appeal in *Swann, supra,* 22 Cal.App.4th 1324, and *Princess Hotels, supra,* 33 Cal.App.4th 645, is accurate. A property owner who receives " 'direct pecuniary benefits from the plaintiff[s'] use of the areas where the plaintiffs were injured' *and* 'either directly created the risk [citation] or exercised direct [citation] or de facto [citations] control over that area' " may be found liable for the plaintiff's injury. (*Princess Hotels, supra,* 33 Cal.App.4th at p. 649, quoting *Swann, supra,* 22 Cal.App.4th at pp. 1331-1333, italics in original.)

Of course, the corollary also applies. In the absence of a direct benefit derived from the very feature of the adjoining property that caused the plaintiff's injury, no liability should attach. The majority insists that the result in *Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d 394, would have been the same if the plaintiff, instead of having been injured on a defective walk adjacent to the defendant's restaurant, had been a social guest who suffered a like injury while approaching the defendant's residence. I disagree. Indeed, as I read these cases, the office of the so-called "benefit" requirement is to limit the potential for tort liability in adjacent premises litigation by identifying a causally significant feature to serve as a functional substitute for the ownership or possession that, by definition, is absent from these adjacent premises liability cases. That a "direct" or "special" benefit to the defendant landowner should have been singled out is hardly surprising. Benefit is frequently the pivot on which legal duties, and liability for their breach, turn.

## II

It is possible the majority is impliedly adopting a new rule in the aftermath—almost 30 years on—of this court's opinion in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, and is now obliterating altogether the link between a direct commercial benefit and a corresponding legal duty that has long served as the underlying basis for liability in the adjacent premises cases. It is true, of course, that *Rowland* v. *Christian* abolished the distinction between business invitees and other classes of visitors to real property, supplanting it with a property owner's general duty to "act[] as a reasonable [person] in view of the probability of injury to others . . . ." (*Id.* at p. 119.) It is a dramatic leap, however, from that proposition to the view that the

substantial distinction between those who derive a commercial benefit from the plaintiff's use of a feature of adjacent property and those who do not is simply not relevant to the question of liability.

Moreover, as Justice Kennard has noted, applying the *Rowland* v. *Christian criteria* demonstrates that liability should not attach in this case. (Dis. opn. of Kennard, J., *ante*, at pp. 1182-1183.) While it is "foreseeable" that one in plaintiff's precise circumstance might be injured by stepping on the defective meter housing cover, and certain that plaintiff was injured, not one of the remaining factors outlined in *Rowland* supports liability in this case. Indeed, several pull strongly in the opposite direction. The lesson of this case is simple: Do no good works lest you incur liability. The homeowner who clears brush from public lands to minimize fire danger; the property owner who pays a horticulturist to prune trees in a subdivision's common area, as well as the landlord who mows an unowned strip of ground, may now be liable to anyone injured on the premises even though their activity is completely unrelated to the cause of the injury.

These defendants did nothing villainous or even negligent. They neither created the hazard, nor made it worse, nor obtained a "commercial benefit" from the plaintiff's "use" of it. Moreover, they had no ability to correct a problem that resulted from the city's apparent negligence. Instead, defendants acted responsibly by mowing the city-owned strip between their property and the sidewalk rather than allowing it to become an eyesore. And once an injury occurred, they sought to prevent future problems. For their pains, the majority will teach them the truth of another old adage: "no good deed goes unpunished."

CONCLUSION

I would reverse the judgment of the Court of Appeal and direct the trial court to enter summary judgment for defendants.